UNITED STATES RUBBER COMPANY, a Corporation, Plaintiff,

v.

BERCHER'S ROYAL TIRE SERVICE, INC., Eugene A. Bercher, Doris E. Bercher, Paul J. Bercher, Jr., and Martine Bercher, Defendants.

No. 1620.

United States District Court
W. D. Arkansas,
Fort Smith Division.

May 23, 1962.

Daily & Woods, Fort Smith, Ark., for plaintiff.

Hardin, Barton & Hardin, Charles R. Garner, Fort Smith, Ark., for defendants.

JOHN E. MILLER, Chief Judge.

This case is before the court upon plaintiff's motion for summary judgment in its favor dismissing the defendants' defense of set-off based upon an oral agreement of compromise and settlement, on the ground that there is no genuine issue as to any material fact and that the plaintiff is entitled to a judgment as a matter of law.

Plaintiff filed its complaint on December 13, 1961, containing three counts. Count I alleged the indebtedness of the defendants to the plaintiff as evidenced by two promissory notes, which notes were executed and delivered by Bercher's Royal Tire Service, Inc., hereinafter called defendant, to the plaintiff to evidence the indebtedness that it owed for goods, wares and merchandise sold by the plaintiff to the defendant, and that each of the said notes is long past due, in default, and wholly unpaid.

In Count II the plaintiff alleged that the defendant became and still remains indebted to the plaintiff on an open account styled "Warehouse Account" for goods, wares and merchandise sold by the plaintiff to the defendant on consignment and thereafter sold by consignee, the proceeds of which consignment sales have not been remitted by the defendant to the plaintiff.

In Count III plaintiff alleged that the defendant became indebted to the plaintiff on three installment payments due under two installment notes, two of the installment payments having matured on November 10, 1960, and one having ma-

tured December 10, 1960, said notes evidencing the guaranty of defendant of 85 percent of the face amount of conditional sales contracts sold by the defendant to the plaintiff and remaining uncollected and in default, said indebtedness in this count being labeled and styled by the parties hereto as "Budget Note Assistance."

The complaint alleged that the other defendants, Eugene A. Bercher, Doris E. Bercher, Paul J. Bercher, Jr., and Martine Bercher, are liable for all of the aforesaid indebtedness from the defendant, Bercher's Royal Tire Service, Inc., to the plaintiff as guarantors.

On January 18, 1962, the defendants filed their answer, in which they denied the allegations of the complaint, and for further defense to the complaint, the defendants alleged that on the 20th day of September, 1960, the parties entered into an agreement, compromising and settling their differences, and that under and by virtue of the terms of the said agreement, plaintiff, among other things, agreed to allow the defendant all of the credits that it was rightfully entitled to and further stipulated and agreed that the plaintiff would accept return of all of the inventory of United States Rubber Company products, which were commonly referred to as "Self-Owned Inventory," on the 19th day of October, 1960. Defendants alleged that the agreement further stipulated that the price to be allowed as a credit against any indebtedness then owing by defendant for the items in the "Self-Owned Inventory" was to be calculated on the basis of plaintiff's price list, which applied to the various items contained in the "Self-Owned Inventory" less a handling charge of 2½ percent, with the defendant paying the freight charges to plaintiff's warehouse in Oklahoma City, Oklahoma. That a further consideration of said compromise settlement was that the defendant would pay indebtedness which were currently due as of September 20, 1960, and that the credit or credits which the plaintiff owed to the defendant would be deducted and taken from the notes and

accounts set forth and mentioned in Counts I, II and III of the complaint, and that at the time of the entry into said compromise settlement and in compliance with the terms thereof, the defendant paid the plaintiff the total sum of $13,812.52, said amount being represented by two separate checks which were handed to the plaintiff on September 20, 1960; that the parties did further agree that between the time of September 20 and October 19, 1960, that reasonable efforts would be made by each of the parties to attempt to sell the "Self-Owned Inventory," and the balance remaining was to be received and accepted by plaintiff on October 19, 1960, as aforesaid, and the defendant was to be credited with the amount and value thereof as aforesaid; and that the defendant agreed to forebear any claim against the plaintiff for antitrust violations.

The defendants further alleged that they did on October 19, 1960, cause to be transported and delivered to plaintiff the remaining "Self-Owned Inventory" aforesaid, but that the plaintiff refused to accept delivery thereof and the same was stored by the carrier at the Commercial Warehouse in Oklahoma City, Oklahoma, subject to the call of the plaintiff.

In its counterclaim filed on the same date the defendant alleged that it is entitled to judgment by reason of the credits owing it under the above-stated compromise settlement agreement, and the defendant further alleged that it was entitled to damages from the plaintiff, which were caused by plaintiff's defamation of defendant in the trade about its credit in an unlawful and illegal manner, calculated by the plaintiff to damage the defendant, its credit and reputation.

On February 7, 1962, plaintiff filed its reply to defendants' counterclaim, in which it denied all of the defendants' allegations.

On April 12, 1962, plaintiff filed a pleading entitled "AMENDMENT TO REPLY TO COUNTERCLAIM AND SUPPLEMENTAL ANSWER TO COUNTERCLAIM AND SET-OFF

PLEADED IN DEFENDANT'S ANSWER AND COUNTERCLAIM, AS AMENDED," in which plaintiff pleaded the provision of the applicable statutes of fraud of the State of Arkansas, and expressly pleaded all of the provisions of the written agreement between the plaintiff and the defendant executed January 1, 1960, styled "United States Dealer's Warehouse Agreement."

On April 21, 1962, plaintiff filed its motion for summary judgment in support of which the plaintiff relied upon the defendant's answer, in which the compromise and settlement agreement was alleged, and the deposition of Mr. P. Hugh Hardin taken in this cause on April 2, 1962.

On April 30, 1962, the defendant filed its response to the motion for summary judgment, in support of which the defendant relied on an affidavit executed by Eugene A. Bercher, President of the defendant, on April 30, 1962, which affidavit was supported by correspondence between defendant and plaintiff subsequent to September 19, 1960, the date of the compromise and settlement agreement.

The plaintiff in support of the motion contends that the set-off alleged by defendant in its answer based upon an alleged agreement of the plaintiff to repurchase the defendant's "Self-Owned Inventory" of plaintiff's products is unenforceable under the applicable Statute of Frauds, Ark.Stat.Ann. Sec. 68–1404 (1947).

The defendant contends that the motion should be denied because (1) there is a genuine and material issue of fact and that, therefore, the court is without jurisdiction to grant plaintiff's motion for summary judgment; and (2) that the Statute of Frauds is not applicable in the case at bar, and in the alternative that if it is applicable that the actions of the parties have removed it from the Statute of Frauds.

The question presented to the court is whether there is any genuine issue as to any material fact within the meaning of Rule 56, Fed.R.Civ.P., 28 U.S.C.A., and whether either party is entitled to a judgment as a matter of law. In Marion County Co-Op Ass'n v. Carnation Co., (W.D.Ark.1953), D.C., 114 F.Supp. 58, aff'd 8 Cir., 214 F.2d 557, this court quoted extensively from a number of decisions of the Court of Appeals for this Circuit relative to various phases of the summary judgment rule. The court will not repeat those quotations here. Suffice it to say that the burden of establishing the nonexistence of any genuine issue of fact is upon the moving party, and all doubts are resolved against him. It is with that rule in mind that the court must consider the record in this case.

The controlling statute, Ark.Stat.Ann. Sec. 68–1404 (1947), provides as follows:

"Statute of frauds.—(1) A contract to sell or a sale of any goods or choses in action of the value of thirty dollars [$30.00] or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

Since it is admitted that an oral contract of compromise and settlement was entered into between the parties in the present case, the first question to be decided is whether there is a genuine issue as to any material fact affecting the applicability of the Statute of Frauds to this particular contract. The undisputed facts show clearly that the duly constituted agents of the plaintiff and of the defendant entered into an oral contract of compromise and settlement on September 20, 1960, under the terms of which the defendant corporation was to:

(1) Waive its right of thirty days notice prior to termination.

(2) Waive its claim against plaintiff for violation of antitrust laws of the

United States and the State of Arkansas.

(3) Pay immediately the sum of $13,-812.52 which was then due plaintiff under various accounts.

(4) Endeavor to sell the self-owned inventory during the following thirty-day period.

(5) Return the self-owned inventory (excepting private brand tubes and batteries) remaining at the end of the thirty-day period to the plaintiff at Oklahoma City, freight prepaid, with a 2½ percent discount for handling charge.

(6) Pay the plaintiff the balance due it on the other accounts after the various adjustments and credit for the self-owned inventory had been made.

In consideration of the promises and the actions of the defendants, the plaintiff corporation agreed:

(1) To allow the defendant corporation credits which had heretofore been denied on cooperative advertising, volume bonus, tire adjustments and battery adjustments.

(2) To attempt to place portions of the defendant's self-owned inventory with other U. S. Royal dealers in this area.

(3) To accept for return certain merchandise in the defendant corporation's self-owned inventory which had not been sold within thirty days and to credit defendant corporation with the invoice part of this merchandise, less 2½ percent handling fee, and not including freight charges.

■ As for the requirement of written agreements under the Statute of Frauds, the general rule is that compromise agreements need not be in writing unless the subject matter thereof is within the Statute of Frauds or the local statutes require compromise to be in writing, 11 Am.Jur., Compromise and Settlement, Sec. 3, p. 248. In accord, Restatement of the Law of Contracts, Sec. 407. As to whether the Statute of Frauds alleged in the present action controls the above oral compromise and settlement agreement, comment (b) of the Restatement of the Law of Contracts, Sec. 407, p. 768, states as follows:

"b. The Statute of Frauds generally does not preclude oral rescission of a prior contract that is within the Statute and that satisfies the statutory requirement of a writing. But if the prior contract effected a change of ownership of land or goods, an agreement to rescind is in effect an agreement to change the ownership again, and such an agreement requires the same formality as the original transfer."

■ Granted that part of the oral agreement in question involves the transfer of title of goods, i. e., defendant's "Self-Owned Inventory," the next question is whether all or part of the contract would be governed by the Statute of Frauds. The answer to this question appears in 37 C.J.S., entitled Frauds, Statute of, § 141, and is stated as follows:

"In order for the statute of frauds to apply, the transaction or agreement must constitute a sale or contract to sell; but, if the contract is one to sell goods, the fact that it also requires the parties to do something else does not take it out of the statute."

Therefore, it appears that there is no genuine issue as to the material fact of the provisions of the oral contract in question, and the law is clear that such a contract as a whole would be subject to the Statute of Frauds as alleged by the plaintiff in its motion for summary judgment.

■ Since the court is of the opinion that the oral contract of compromise and settlement entered into by the parties in the present case is within the Statute of Frauds, the next question is whether there is any genuine issue as to material fact which would remove the contract from the Statute of Frauds. In approaching the answer to this question, the statute itself must be analyzed, and such analysis discloses that the satisfaction of any one of three basic provisions

will remove an oral contract from the statute's toils. A contract for sale of property of value of $30.00 or more shall not be enforceable unless (1) the buyer shall accept part of the goods so contracted to be sold, or sold and actually receives the same, or (2) the buyer shall give something in earnest to bind the contract or in part payment thereof, or (3) some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf. The provisions of the statute are stated disjunctively. Thus, a contract may be removed from the statute if any one of the provisions is complied with, it not being necessary that every provision must be satisfied in order to effect removal.

Turning to the first provision which requires the acceptance and receipt of the goods by the buyer, or plaintiff in the present case, the basic facts are undisputed that the defendant shipped its remaining "Self-Owned Inventory" on October 19, 1960, to the plaintiff's warehouse in Oklahoma City, Oklahoma, and upon its arrival an agent of the plaintiff refused to accept delivery of the goods.

The applicable Statute of Frauds, Ark. Stat.Ann. Sec. 68–1404(3) (1947), states as follows:

"(3) There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods."

The general rule is stated in 49 Am. Jur., Statute of Frauds, Sec. 272, as follows:

" * * * In order to comply with the requirement, there must be delivery, receipt, and acceptance. All three must exist. While some eminent judges have supposed that the terms 'accept' and 'actually receive,' as used in the English statute, were synonymous, it may now be regarded as definitely and finally settled that these terms have distinct mean-

ings, and that both acceptance and actual receipt, which imply delivery, are essential to take the case out of the statute. There may be an actual receipt without an acceptance, and an acceptance without a receipt. The receipt of the goods is the act of taking possession of them. Acceptance is an assumption of ownership on the part of the buyer, treating the goods as his own. Where the seller gives to the buyer the actual control of the goods, and the buyer accepts such control, he has actually received them. Such a receipt is often an evidence of an acceptance, but it is not the same thing. An acceptance of the subject of the sale must be composed of acts of such a character as to place the property sold unequivocally within the power and under the exclusive dominion of the buyer as absolute owner, free from all lien for the price."

In accord: Ferguson-McKinney v. Whitley & Greer, 156 Ark. 336, 246 S.W. 475 (1923).

Therefore, it is apparent from the undisputed facts that the defendant did not satisfy the first provision of the Statute of Frauds in order to effect the removal of the contract as a matter of law.

Turning to the second general provision, which requires the giving of something in earnest to bind a contract or in part payment thereof, the facts in the present case are undisputed that the plaintiff wrote a letter to the defendant on October 10, 1960, part of which states the account between the parties to that date as follows:

"We are enclosing your statement covering your account through September 20, 1960 on both dating and regular accounts together with work sheet covering regular account in duplicate.

"You will note on the work sheet that we have carried your account through September 30 which includes heavy service items normally not due; however, in view of the

credits which would be applied against the invoices concerned, there is very little, if any, difference owing and it would be well to bring this particular account into reconciliation through the date of September 30, 1960.

"In all probability additional credits will be issued to your account, which will of course, first be applied to any dating balance remaining due and then against the last note or notes as agreed.

"In addition to your regular account due in the amount of $4,745.59, dating account due October 10 amounts to $691.20, these two accounts totaling $5,436.79. You may deduct 2% cash discount in the amount of $102.90 provided your remittance in the amount of $5,-333.89 is received in our office on or before Monday, October 17, 1960.

"In addition to the balance indicated above, budget note payments due October 10 amount to $2,875.33 plus interest of $29.50 or a total due of $2,904.83.

"There is a total due on your account including regular, dating and budget notes payments as of October 10, less applicable cash discount indicated above, of $8,238.72.

"We would like to take this opportunity to remind you that Note No. 2 in the amount of $10,000.00 plus interest of $133.34 or a total of $10,133.34 will be due October 20, 1960."

The undisputed evidence also shows that the defendant made the following payments pursuant to the contract in question: $13,812.52 then owing to the plaintiff under various accounts, and $2,-904.83 mailed to the plaintiff on October 12, 1960, the October budget note payment. Furthermore, the defendant already had returned all inventory that had been on consignment.

The law on the question of part payment is well settled. In 49 Am.Jur., Statute of Frauds, the rule is stated as follows:

"4. PAYMENT OR GIVING OF EARNEST MONEY

"a. In General

"Sec. 265. *Generally.*—The English statute of frauds, the Uniform Sales Act, the English Sale of Goods Act, and the statutes of like import requiring a written memorandum of a contract for the sale of goods where the value exceeds a stated sum universally except from the operation of their respective provisions cases in which payment or part payment of the price is made or something is given in earnest to bind the bargain. In this connection 'earnest' and 'part payment' are regarded as the same thing. Either contemplates the passing of something of value to the seller; that is, something of value must be really given or received toward payment, and it must be an actual transfer or delivery of the thing or the money agreed to be given as earnest money or payment, and, although of value to the seller, must be a part of the price. The true legal effect of earnest money is to afford conclusive evidence that a bargain has been actually completed.

"Sec. 266. *Time of Payment.*— * * * Under statutes such as the Uniform Sales Act, which has been adopted in many states, and provisions of like purport, the time of payment or part payment is not made an element, and it is held that the payment need not be made at the time the contract is entered into. A partial payment made after the conclusion of an oral sale satisfies the statute unless it expressly requires that partial payment be made at the time of the sale. * * *

"b. Medium of Payment

"Sec. 267. *Generally.*—The payment of part payment required to be given in order to take an oral contract of sale of personalty out of the

statute of frauds may be in money, but payment in money is not necessary; the requisite payment or part payment may be made in anything of value which by mutual agreement is given by the buyer and accepted by the seller on account or in part satisfaction of the purchase price. * *

*  *  *  *  *  *

"Sec. 269. *Giving Credit on or Discharging Existing Debt.*—As a general rule it may be said that an actual discharge of an indebtedness owing from the seller to the buyer or from the seller to a third person is a sufficient part payment to satisfy the requirements of the statute of frauds. But as to just when there is such a transaction as to constitute an actual discharge is the important factor. The general rule is that a mere oral argeement to discharge an indebtedness owing from the seller is not a sufficient part payment to take the contract out of the statute of frauds, and that such discharge of an existing indebtedness must be evidenced by a writing of some kind, such as a receipt, a discharge of the indebtedness on the books of the creditor, or some other like unequivocal act not resting in mere words. * * * "

The court is aware that no payment, partial or otherwise, was made by the plaintiff as a direct result of the defendant's "Self-Owned Inventory" being shipped to plaintiff's Oklahoma City warehouse. However, the fact is undisputed that the parties entered into a contract, the purpose of which was to compromise and settle their differences. One of the main differences was the defendant's indebtedness to the plaintiff. A major item of the compromise and settlement agreement was the defendant's "Self-Owned Inventory," not only because of the amount involved but also because the plaintiff has insisted that the Statute of Frauds governs the whole contract because part of it provided for the return of defendant's "Self-Owned Inventory" remaining on hand as of Oc-

tober 19, 1960, to the plaintiff, which would effect a transfer of title to these goods. Since the whole contract is governed by the Statute of Frauds, then it follows that any payment made by the plaintiff to the defendant in the form of crediting the defendant's account would be the giving of something in earnest or a part payment of the whole contract, part of which contract called for the defendant to send its remaining "Self-Owned Inventory" to the plaintiff for the purpose of reducing the amount of the debt owned on the open account.

The Supreme Court of Arkansas in the case of Jones v. Gregg, 226 Ark. 595, 293 S.W.2d 545 (1956), defined entire and severable contracts as follows, beginning at page 604 of 226 Ark., at page 550 of 293 S.W.2d:

" 'As a general rule it may be said that a contract is entire when by its terms, nature, and purpose it contemplates and intends that each and all of its parts and the consideration shall be common each to the other and interdependent. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment.'

"As in all other written instruments, the primary test for determining whether a contract is entire or severable is the intention of the parties to the contract. This intention is to be ascertained from the language used, the subject matter of the contract and the circumstances of the particular transaction.

"Other aids in arriving at the intention of the parties include the singleness or apportionment of consideration, the divisibility of the subject matter, and the construction given to the contract by the parties themselves. As a general rule it may be said that a contract is entire when, by its terms, nature, and purpose, it contemplates that each and all of its parts are interdependent and common to one another and to

the consideration, and that it is severable when, in its nature and purpose, it is susceptible of division and apportionment. Acts of the parties in treating the contract as entire or severable have an important bearing on its construction."

In the present case, there is no doubt but that the plaintiff's prime object in filing its complaint was to collect what amounted to an outstanding debt allegedly owed by the defendant, as plaintiff's former dealer. By the same token, defendant's main defense is a set-off of a large self-owned inventory of plaintiff's products which it had purchased from plaintiff on an open account. Since both sides had engaged in a company-dealer relationship over a period of time, there were also a multitude of lesser debits and credits to be settled between them. It is apparent then that as competent businessmen the oral agreement entered into by the parties on September 20, 1960, could be interpreted only as an indivisible contract made up of interdependent provisions, which by their very nature were all directed toward the settlement of defendant's debt owed to the plaintiff that had arisen out of their former business relationship.

Therefore, since there is no dispute that the parties contemplated a sale of goods constituting part of their contract of compromise and settlement, and part payment was made on both sides in reliance thereon, the court is of the opinion that the part of the contract providing for the sale of goods to the plaintiff by the defendant was removed from the operation of the Statute of Frauds, thus removing the entire contract.

The third provision of the Statute of Frauds requires that some note or memorandum in writing of the contract or sale be signed by the party charged or his agent in that behalf. This is also called for in the law of part payment as heretofore stated. Thus, the final question is whether there is any dispute of fact as to the existence of a written memorandum of the contract in question.

The heretofore stated letter dated October 10, 1960, sent by the plaintiff to the defendant has been introduced into evidence and not contested by the plaintiff. It concludes as follows:

"To reiterate arrangements made during our visit with you September 21 and 22, the following was agreed upon:

"1. All maturities would be paid and discounted within terms extended.

"2. Budget notes and regular notes would be paid on maturity dates, i. e., budget notes on the 10th of each month concerned, and regular notes on the 20th of each month concerned, plus interest.

"3. It was agreed that should you fail to pay any of the maturities indicated above on the dates due, that we would immediately notify your guarantors, Messrs. Martine and Paul Bercher for payment of the account. These Gentlemen agreed to this stipulation.

"4. Should credits be issued to your account exceeding the regular and dating account owing, such credit balance would be applied to the last note or notes; however, should there be a deficit, same would be paid immediately.

"5. With regard to your self-owned inventory covering other than Group 1 tires, approximating some $8,000 it was agreed that you would make every effort to move this merchandise during the 30 day period following the date of your cancellation notice and at the end of that time the merchandise remaining on hand would be completely reviewed by yourselves and the Sales Department with regard to the returning of same for credit.

"It was stipulated at that time that should any merchandise be returned for credit, it would be returned freight prepaid, and you would be penalized the 2½% handling charge.

"Again, we wish to caution you that your checks covering your account due October 10 must be in our office on or before Monday, October 17, in order to earn the cash discount concerned.

"Very truly yours,
"/s/ C. R. McCallister

"C. R. McCallister
"District Credit Manager"

It is signed by the agent of the plaintiff who was present at the time the oral agreement was entered into, and it was addressed to the defendant.

The law requiring a written memorandum, which is necessary to remove a contract from the Statute of Frauds or to evidence part payment, is stated in 49 Am.Jur., Statute of Frauds, as follows:

"B.   TIME OF MAKING
"Sec. 316.   *Generally.*—In any case in which a memorandum is required only as evidence of the contract and not to constitute it, it is not necessary that it be made and signed by the party to be charged at the time of the making of the contract.   Thus, a letter written years after the contract was made, signed by the party to be charged, may be used as a basis to charge the writer.   A written memorandum of the agreement executed after performance of the services contracted for satisfies the demands of the statute just as effectively as if it were written and signed prior thereto.   A letter written by the party to be charged referring to and setting out the prior oral contract may constitute a sufficient memorandum thereof. * * *

"C.   FORM AND CONTENTS
"1.   In General
"Sec. 321.   *Generally*— * * *
"Generally speaking, a memorandum in writing meets the requirements of the statute of frauds that certain contracts shall be evidenced by writing if it contains the names of the parties, the terms and conditions of the contract, and a description of the property sufficient to render it capable of identification. * * *

* * * * * *

"Sec. 325.   *Letters.*—The memorandum required to satisfy the statute of frauds may be found to exist in the form of a letter, constituting a communication between the parties to the contract or by one of the parties to his agent or other third persons, provided, of course, the letter meets the requirements of the statute as to contents, signature, delivery, and so forth.   * * * * "

In accord: Southern Cotton Oil Co. v. Coleman, 116 Ark. 268, 170 S.W. 992 (1914); Lee v. Vaughan's Seed Store, 101 Ark. 68, 141 S.W. 496, 37 L.R.A.,N.S., 352 (1911).

Since there is no genuine dispute as to the existence of the letter dated October 10, 1960, and its contents, as quoted above, and it is apparent that as a matter of law it was sufficient to remove the oral contract in question from the Statute of Frauds, the third provision of the Statute of Frauds is deemed to have been satisfied.

Thus, the court is convinced that there is no genuine issue of material fact, and furthermore the court is of the opinion that as a matter of law the contract in question did come under the Statute of Frauds, Ark.Stat.Ann. Sec. 68–1404 (1947), since it in part called for the sale of goods of a value exceeding $30.00. However, the court further finds that by virtue of not only the fact that there has been the giving of something in earnest to bind the contract and part payment thereof, as evidenced by a written memorandum in the form of a letter, but also by the fact that the whole contract itself was evidenced sufficiently by a written memorandum contained in the same letter, the entire contract in question was removed from the Statute of Frauds and that such statute does not operate as a

378

bar to defendant's set-off and to the assertion of its counterclaim.

Therefore, an order is being entered today denying plaintiff's motion for summary judgment.