## MARION COUNTY COOPERATIVE ASS'N.

### v.

## CARNATION CO.
### No. 14966.

United States Court of Appeals
Eighth Circuit.
June 29, 1954.

Rehearing Denied July 22, 1954.

558

Gideon H. Schiller, Clayton, Mo. (Franklin E. Reagan and Adolph K. Schwartz, St. Louis, Mo., and Luther H. Cavaness, Yellville, Ark., were with him on the brief), for appellant.

P. H. Hardin and G. C. Hardin, Fort Smith, Ark. (J. Clib Barton and Chas. R. Garner, Fort Smith, Ark., were with them on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

Appellant brought suit for treble damages for alleged violation of the Sherman Anti-Trust Act of 1890, 15 U.S.C.A. §§ 1–7, and 15 U.S.C.A. § 15.[1] The trial court sustained appellee's motion for summary judgment under Rule 56, F.R.C.P., 28 U.S.C.A. The sole question on this appeal is whether the court erred in sustaining said motion. The parties will be referred to as they appeared in the court below.

For its cause of action against the defendant, plaintiff alleged:

"4. That in and about Marion County, Arkansas, there has existed for many years prior hereto and does presently exist a milk producing area or shed, which shed produced Grade 'C' raw milk which is used in the manufacture of dairy products; that both the plaintiff and the defendant each maintained a dairy products plant, and in connection therewith each party engaged in buying raw milk from the producers in the shed, manufacturing products therefrom and selling the products in interstate commerce.

"5. * * *

"6. That sometime in the fall of 1951 and at other times unknown to the plaintiff, the defendant, Carnation Company, by and through its

1. Sections of the Sherman Act relevant to this case are:

Sec. 1. "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal".

Sec. 2. "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, * *."

Sec. 15. "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor * * * and shall recover threefold the damages by him sustained * * *."

officers, managers and agents, conceived a plan and scheme for obtaining unlawful control, monopoly and corner of the aforesaid milk shed, restricting interstate commerce and trade thereby, which plan or scheme was put into effect by the defendant commencing in the fall of 1951 and consisted of the establishment and maintenance of a 'fictitious price'; that the said 'fictitious price' consists of payments for raw milk to producers in the said shed which (a) were in excess of the usual and normal prices paid in the said milk shed in the normal course of business; and (b) resulted in a loss to the defendant on the sale of its products manufactured from raw milk purchased in the said shed at the said price; and (c) were calculated to result in a loss to any other purchasers, including the plaintiff herein, of raw milk in the said shed, meeting the said 'fictitious price' established and maintained by the defendant.

"7. That the plaintiff met the 'fictitious price' of the defendant at the time of its institution thereof by the defendant but was unable to continue to meet the said price, and that by reason hereof it lost its patrons, suffered financial losses, and did thereby cause the destruction of its business.

"8. That the 'fictitious price,' plan and scheme of the defendant was by reason of the premises contrary to and in violation of Sections 1 and 2 of Title 15 U.S.C. in these respects: (a) That the plaintiff was eliminated as a competitor of the defendant; and (b) That the defendant was put in position to unlawfully control, monopolize and corner a large portion of the purchases of raw milk in and about the said shed, all in restriction of interstate trade and commerce and in unlawful interference with the plaintiff's business."

Defendant filed a motion to dismiss the complaint, or, in the alternative, for summary judgment. The trial court held that the complaint failed to state a cause of action under Sec. 1 or the conspiracy portion of Sec. 2 of the Sherman Act and accordingly dismissed the portion of the complaint alleging an actionable conspiracy. Plaintiff, in its Statement of Points, assigned this action of the court as error but has not briefed or argued the point in this court. In view of the statement in plaintiff's brief that,

"We do not perceive the necessity of briefing the conspiracy theory of our Complaint for the reason that if the ruling of the District Court were set aside by this Court, the ultimate relief that would be obtained by the Appellant would be the same whether the Complaint is predicated on Sections 1 and 2 of the Sherman Act or Section 2 alone.",

we conclude that plaintiff has abandoned the point.

The trial court held that the complaint stated a cause of action under that portion of Section 2 of the Sherman Act which provides, "Every person who shall monopolize, or attempt to monopolize * * * any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor * * *." Upon consideration of the motion for summary judgment, however, the trial court concluded, after a careful review of the decisions of this court and an exhaustive analysis of the facts as shown by the affidavits and depositions on record, that no genuine issue of material fact existed and that defendant was entitled to a judgment as a matter of law. 114 F. Supp. 58. It therefore granted the motion for summary judgment.

Recent decisions of this court have clearly defined and established the scope and purpose of the summary judgment

rule. Our latest expression of the rule was in the case of Durasteel v. Great Lakes Steel Corp., 8 Cir., 1953, 205 F.2d 438, 441, where it was said, "The motion for summary judgment is not a trial of the issues but for the purpose of determining whether in fact there are any genuine issues as to material facts." In Ford v. Luria Steel & Trading Corp., 8 Cir., 1951, 192 F.2d 880, 882, it was stated, "It has become settled law that a genuine issue as to a material fact cannot be tried and determined upon affidavits, and that it must be conclusively shown that there is no such issue in the case and that the moving party is entitled to judgment as a matter of law, before a summary judgment can lawfully be entered." We have also held that, "The question of the sufficiency of the evidence raises an issue of law and if, under the facts, the court would be required to direct a verdict for the moving party, then a summary judgment should be granted." Hurd v. Sheffield Steel Corp., 8 Cir., 1950, 181 F.2d 269, 271. For other statements on the summary judgment rule, see Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 1951, 191 F.2d 881; Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 1951, 189 F.2d 213; Sprague v. Vogt, 8 Cir., 1945, 150 F.2d 795; Walling v. Fairmont Creamery Co., 8 Cir., 1943, 139 F.2d 318.

██ In support of its motion for summary judgment defendant filed numerous affidavits and depositions, including several of officers and agents of competing companies. Plaintiff did not file affidavits or depositions of any of its expected witnesses, although it did take the depositions of four of defendant's affiants. The uncontradicted and undisputed statements on record at the time of entry of judgment herein established the following facts: Defendant maintains and operates an evaporating plant or milk condensary at Mount Vernon, Missouri. Milk is received at this plant from seven "feeder" stations located in various towns in Missouri, Kansas, and Arkansas, all within the area known as the Southwest Missouri Milk Shed. Defendant purchases Grade "C" raw milk in this area in competition with Pet Milk Co., Kraft Foods, Producers Creamery, Standard Milk Co., Milnot Co., Seven Valleys Cheese, Twin Lakes Dairy, plaintiff, and several other companies. All companies, except one, pay farmers and producers twice monthly for milk purchased from them. The producers are not advised of the price they will receive for the milk at the time it is picked up by company haulers. The price is determined after the close of each pay period. For example, the price paid for milk purchased between the 1st and 15th of the month is determined within one to four days thereafter, or between the 16th and 20th of the month, depending on the practice of the respective companies. Defendant's superintendent at Mount Vernon, Missouri, testified by deposition that five days prior to the close of each pay period he submits information to the company office at Los Angeles, California, whereupon an officer of defendant company fixes the price to be paid for milk purchased during that period. The information submitted consists of competitors' prices for the prior pay period, number of patrons, including gains or losses therein, weather conditions, crop conditions, milk production, feed prices, etc. Deponent stated that three or four days after the close of each pay period he receives word from Los Angeles as to what price will be paid, and thereafter checks are mailed from the Mount Vernon office to all patrons selling milk to defendant. Defendant and Pet Milk Co. post the prices as soon as they are received, with Pet Milk Co. posting its prices earlier than defendant about 75% of the time. Prices paid by other competitors are obtained through field men, patrons' check stubs, word of mouth, and other means. No company learns what price a competitor is paying

until after payment is made, except occasionally when the price is posted. The affidavits and depositions established that the prices paid by the various competitors during the period complained of were generally very similar.[2] The chart set out in the margin shows that during every pay period at least one competitor paid a higher price for milk than defendant.

[2] Prices paid for Grade "C" raw milk based on 4% butterfat per 100 weight:

Producers Creamery*

| | | | | Carnation | Pet | Kraft | Springfield | Cabool | Standard | Milnot ** | Seven Valleys | Twin Lakes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1951 | Sept. | 1st half | | $3.75 | $3.75 | $3.75 | $3.60 | $3.75 | $3.75 | $3.90 | $3 68 | $3.75 |
| | | 2nd half | | 3.75 | 3.75 | 3.75 | 3.60 | 3.75 | 3.75 | 3.90 | 3.68 | 3.75 |
| | | | | | | | | | | | 3.68 | |
| | Oct. | 1st half | | 3.75 | 3.75 | 3.75 | 3.60 | 3.85 | 3.75 | 3.90 | 3.68 | 3.75 |
| | | 2nd half | | 3.85 | 3.85 | 3.85 | 3.70 | 3.85 | 3.85 | 4.05 | 3.68 | 3.75 |
| | | | | | | | | | | | 3.68 | |
| | Nov. | 1st half | | 3.90 | 3 90 | 3.90 | 3.80 | 3.85 | 3.90 | 4.20 | 3.68 | 3.85 |
| | | 2nd half | | 4.00 | 4.00 | 4.00 | 3.90 | 3.95 | 4.00 | 4.35 | 3.68 | 3.85 |
| | | | | | | | | | | | 3.88 | |
| | Dec. | 1st half | | 4.05 | 4.05 | 4.05 | 3.95 | 4.00 | 4.05 | 4.50 | 3.88 | 3.90 |
| | | 2nd half | | 4.25 | 4.25 | 4.25 | 4.05 | 4.25 | 4.25 | 4.60 | 3.88 | 4.00 |
| | | | | | | | | | | | 4.20 | |
| 1952 | Jan. | 1st half | | 4.25 | 4.25 | 4.25 | 4.25 | 4.25 | 4.25 | 4.60 | 4.20 | 4.00 |
| | | 2nd half | | 4.45 | 4.45 | 4.25 | 4.25 | 4.45 | 4.45 | 4.60 | 4.20 | 4.25 |
| | | | | | | | | | | | 4.20 | |
| | Feb. | 1st half | | 4.55 | 4.55 | 4.55 | 4.25 | 4.45 | 4.55 | 4.70 | 4.40 | 4.45 |
| | | 2nd half | | 4.55 | 4.55 | 4.55 | 4.45 | 4.45 | 4.55 | 4.70 | 4.40 | 4.55 |
| | | | | | | | | | | | 4.40 | |
| | Mar. | 1st half | | 4.50 | 4.50 | 4.45 | 4.45 | 4.45 | 4.50 | 4.55 | 4.60 | 4.55 |
| | | 2nd half | | 4.50 | 4.50 | 4.25 | 4.45 | 4.35 | 4.50 | 4.45 | 4.60 | 4.55 |
| | | | | | | | | | | | 4.60 | |
| | Apr. | 1st half | | 4.35 | 4.35 | 4.35 | 4.25 | 4.35 | 4.35 | 4.45 | 4.40 | 4.40 |
| | | 2nd half | | 4.25 | 4.25 | 4.25 | 4.15 | 4.20 | 4.25 | 4.35 | 4 32 | 4.30 |
| | | | | | | | | | | | 4.12 | |
| | May | 1st half | | 4.15 | 4.15 | 4.15 | 4.05 | 4.15 | 4.15 | 4.25 | 4.12 | 4.25 |
| | | 2nd half | | 4.15 | 4.15 | 4.10 | 4.05 | 4.05 | 4.15 | 4.25 | 4.08 | 4.10 |
| | | | | | | | | | | | 4.08 | |
| | June | 1st half | | 4.15 | 4.15 | 4.15 | 4.05 | 4.15 | 4.15 | 4.25 | 4.08 | 4.15 |
| | | 2nd half | | 4.15 | 4.15 | 4.15 | 4.05 | 4.15 | 4.15 | 4.35 | 4.08 | 4.15 |
| | | | | | | | | | | | 4.08 | |
| | July | 1st half | | 4.15 | 4.15 | 4.15 | 4.05 | 4.15 | 4.15 | 4.35 | 4.20 | 4.15 |
| | | 2nd half | | 4.15 | 4.15 | 4.15 | 4.05 | 4.15 | 4.15 | 4.35 | 4.20 | 4.15 |
| | | | | | | | | | | | 4.20 | |
| | Aug. | 1st half | | 4.15 | 4.15 | 4.15 | 4.05 | 4.15 | 4.15 | 4.35 | 4.20 | 4.15 |
| | | 2nd half | | 4.25 | 4.25 | 4.25 | 4.15 | 4.25 | 4.25 | 4.35 | 4.20 | 4.25 |
| | | | | | | | | | | | 4.20 | |

* Producers Creamery returns dividends to patrons—in effect, increasing the price paid for milk.
** Milnot manufactures filled milk which can be produced cheaper than condensed milk.

Against this showing by defendant that it had paid the usual and normal price for milk during the period alleged in the complaint, plaintiff offered nothing to rebut or contradict defendant's evidence or to affirmatively establish the allegations of the complaint. It chose to rest on the broad charge that defendant had paid a "fictitious" price, or a price in excess of the usual and normal price, for milk and thereby "run a corner" on the market. It is clear that no genuine issue of material fact existed as to any of the facts stated in the affidavits or depositions. The question, therefore, resolves itself to this: Is a general allegation in a complaint, standing alone, sufficient to withstand a motion for summary judgment supported by a prima facie showing that no genuine issue of material fact exists?

Courts, including our own, which have considered this question have uniformly answered it in the negative. In Durasteel v. Great Lakes Steel Corp., supra, it was said [205 F.2d 441], "If it is made clearly to appear on such a motion that even though there is an issue under the pleadings there is in fact no dispute as to the controlling material

facts, then the court should enter summary judgment." Cf. Hurd v. Sheffield Steel Corp., supra. The reason for the rule is apparent. Rule 56 would be rendered useless were the allegations of the pleadings to be determinative of a motion for summary judgment. Lindsey v. Leavy, 9 Cir., 1945, 149 F.2d 899; Engl v. Aetna Life Ins. Co., 2 Cir., 1943, 139 F.2d 469; Surkin v. Charteris, 5 Cir., 1952, 197 F.2d 77; Hisel v. Chrysler Corp., D.C.W.D., Mo.1951, 94 F.Supp. 996. Also see and compare Radio City Music Hall Corp. v. U. S., 2 Cir., 1943, 135 F.2d 715; Gifford v. Travelers Protective Ass'n of America, 9 Cir., 1946, 153 F.2d 209.

It is argued that the fact that competitors generally paid the same price for milk as defendant is consistent with the allegation that defendant paid a "fictitious" price, inasmuch as competitors had to meet defendant's price in order to obtain raw milk. Such an inference is clearly unwarranted from the facts on record. The affidavits and depositions established that the purchase of raw milk in this area is in a highly competitive field. That a shortage of raw milk existed in the area during the time alleged in the complaint, thereby causing the prices to rise. That the prices paid by defendant in 1951 and 1952 were not the highest ever paid in this area. In 1946, the price of raw milk rose to $4.80 per cwt. Again in 1948 the price rose to $4.60 per cwt. And finally, that each competitor determined its own price for the previous pay period before obtaining knowledge of the price paid by other competitors for the same period. On the basis of these uncontroverted facts, the trial court reasonably concluded, "These affidavits and depositions established beyond question that the prices paid by defendant were competitive prices, substantially the same from pay period to pay period as those of competing companies, and were fixed by keen competition and the economic law of supply and demand."

On August 19, 1953, one day after judgment was entered in this case, plaintiff filed an affidavit of Jim Wise, owner of Twin Lakes Dairy, in which affiant stated,

"(B). The increase of 80 cents per hundred pounds of milk in the prices paid for such milk during the period of November 1, 1951 through April 1, 1952, was not due to market increases in the price of butterfat, Grade C milk or milk production, but was due to the increase in prices paid by Carnation Company in said territory, which said prices Twin Lakes Dairy was required to meet in order to stay in business;"

Wise previously had filed an affidavit in support of defendant's motion to dismiss or for summary judgment in which he submitted a list of prices, shown above, which his company paid for milk during the time in question.

Plaintiff's contention that the second Wise affidavit raised an issue of fact not determinable on motion for summary judgment is without merit. The affidavit was not presented to the trial court for consideration, although apparently there was ample time to do so and no excuse for not having done so was offered, as permitted by rule 56(f), 28 U. S.C.A. Therefore it is not properly before this court. We have considered the delinquent affidavit, however, and find it insufficient to defeat the motion for summary judgment. Affiant's statement that he had to "meet" defendant's prices in order to stay in business is completely refuted by the fact that during March, April, and the first half of May, 1952, Twin Lakes Dairy paid *higher* prices for milk than defendant.

The action of the trial court in granting summary judgment for defendant was without error and is affirmed.