CLARENCE LaBELLE POST NO. 217, VETERANS OF FOREIGN WARS OF the UNITED STATES, Appellee,

v.

UNITED STATES of America, Appellant.

No. 77–1550.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1977.

Decided June 12, 1978.

Rehearing and Rehearing En Banc Denied July 14, 1978.

Leonard J. Henzke, Jr., Atty., Tax Div., Appellate Section, U. S. Dept. of Justice, Washington, D. C., for appellant; M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. An-

drews and Libero Marinelli, Jr., Attys., Tax Div., Dept. of Justice, Washington, D. C., Andrew W. Danielson, U. S. Atty., and Elizabeth A. Egan, Asst. U. S. Atty., Minneapolis, Minn., on the brief.

Solly Robins, Robins, Davis & Lyons, St. Paul, Minn., for appellee; Solly Robins, Leslie H. Novak and Terry L. Wade, St. Paul, Minn., on the brief.

Before LAY and BRIGHT, Circuit Judges, and SCHATZ,* District Judge.

BRIGHT, Circuit Judge.

The Internal Revenue Service (IRS) appeals from a summary judgment in favor of Clarence LaBelle Post No. 217, Veterans of Foreign Wars of the United States (Taxpayer), in an action for refund of taxes. The issue in this case is whether income from bingo games conducted by Taxpayer should be subject to the unrelated business income tax imposed by sections 511–513 of the Internal Revenue Code, 26 U.S.C. §§ 511–513 (1970). We reverse and remand.

An organization exempt from taxation under section 501 of the Internal Revenue Code may be required to pay a tax on income derived from a trade or business not related to its exempt purposes. Section 513(a) defines the term "unrelated trade or business" as follows:

[A]ny trade or business the conduct of which is not substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501 * * *.[1]

Section 512(a)(1) defines the term "unrelated business taxable income" to mean the net income derived from an unrelated trade or business. Section 511(a) imposes a tax on unrelated business taxable income.

The Taxpayer, a fraternal and patriotic veterans organization located in Minneapolis, Minnesota, qualifies as an organization exempt from federal income taxation under section 501(c)(4). Taxpayer has held public bingo games twice weekly since 1969 under authority of a Minnesota state law that permits nonprofit organizations such as Taxpayer to conduct bingo games.[2] The IRS treated these bingo games as an "unrelated trade or business" within the meaning of section 513 and taxed the net income from the games under section 511. Taxpayer paid $12,153.31 in taxes for the fiscal years ending June 30, 1971, through June 30, 1974, and then brought this action to obtain a refund. On cross motions for summary judgment, the district court found in favor of Taxpayer. The Government appeals.

Under Taxpayer's theory, income from an unrelated trade or business may be taxed only if the trade or business competes with a taxpaying entity. Taxpayer argues that only tax-exempt nonprofit organizations may operate bingo games in Minnesota; therefore Taxpayer does not compete with taxpaying entities and is not subject to taxes. The Government presents two argu-

---

* ALBERT G. SCHATZ, United States District Judge, District of Nebraska, sitting by designation.

1. Section 513 further provides that the term "unrelated trade or business" does not include any trade or business

(1) in which substantially all the work in carrying on such trade or business is performed for the organization without compensation; or

(2) which is carried on, in the case of an organization described in section 501(c)(3) or in the case of a college or university described in section 511(a)(2)(B), by the organization primarily for the convenience of its members, students, patients, officers, or employees, or, in the case of a local association of employees described in section 501(c)(4) organized before May 27, 1969, which is the selling by the organization of items of work-related clothes and equipment and items normally sold through vending machines, through food dispensing facilities, or by snack bars, for the convenience of its members at their usual places of employment; or

(3) which is the selling of merchandise, substantially all of which has been received by the organization as gifts or contributions.

2. Minn.Stat.Ann. §§ 349.01–.03 (1972) (1976).

ments on appeal. First, it argues that the tax on unrelated business income is not limited to competitive businesses. In the alternative, it argues that Taxpayer's bingo games compete with other forms of entertainment and possibly could compete with bingo games conducted by nonprofit corporations that are not exempt from federal taxes. We need not reach the latter argument for we hold that the tax on unrelated business income is not limited to income earned by a trade or business that operates in competition with taxpaying entities.

Congress enacted sections 511–513 for two purposes: to close a tax loophole and to eliminate a form of unfair competition. The well-known macaroni monopoly case brought the loophole to the attention of Congress. In 1947 a group of benefactors purchased the C. F. Mueller Company, the nation's largest manufacturer of noodles, to be operated solely for the benefit of the New York University School of Law. Because the business was operated solely for a charitable purpose, its income was held to be tax exempt. *C. F. Mueller Co. v. Commissioner*, 190 F.2d 120 (3d Cir. 1951). This gave the Mueller Company a substantial competitive advantage over competing manufacturers of noodles. *See* Comment, *The Macaroni Monopoly: The Developing Concept of Unrelated Business Income of Exempt Organizations*, 81 Harv.L.Rev. 1280 (1968). Recognition of the anticompetitive effect of this loophole led Congress to enact the predecessors to sections 511–513 in the Revenue Act of 1950.[3]

The legislative history of the Revenue Act of 1950 indicates, however, that Congress enacted these provisions not only to eliminate a form of unfair competition, but also to raise revenue. When President Truman presented his 1950 tax proposal to Congress, he stressed the importance of economic growth. Eliminating the loophole that "developed through the abuse of the tax exemption accorded educational and charitable organizations" would, he stated, yield additional revenue as well as reduce inequities in the tax system.[4] The House Ways and Means Committee viewed the bill as one designed to reduce the war excise taxes imposed during World War II and replace the resulting lost revenue by closing loopholes and imposing additional taxes.[5] By the time the bill had reached the Senate the Korean War had begun, and the need for additional revenue was even greater. The Senate converted the bill passed by the House "into a bill to raise revenues."[6] Thus, although Congress enacted sections 511–513 to eliminate a form of unfair competition, that goal existed only as part of a larger goal of raising revenue.

The language of the statute does not limit this new source of revenue to only those unrelated trades or businesses that compete with taxpaying entities, for the term is defined as "*any* trade or business" unrelated to the exempt purpose of the organization. The Senate Report provides further clarification:

As used in this section, the term "trade or business" has the same meaning as it

---

3. Pub.L. No. 814, § 301, 64 Stat. 906, 947 (1950).

4. President's Message to Congress, 96 Cong. Rec. 769, 771 (1950).

5. The committee's report contains the following statements:

The bill provides for substantial reductions in war excise taxes amounting to approximately $1,010 million and contains provisions which make up for the loss of revenue resulting from the excise tax reductions. * *

\* \* \* \* \* \*

The major items accounting for the additional revenue are withholding on dividends,

the changes in the tax treatment of charitable and educational institutions, [etc.] [H R. Rep.No. 2319, 81st Cong., 2d Sess. (1950), *reprinted in* 1950–2 C.B. 380–81.]

6. The Senate Report stated:

Military action in Korea coupled with substantial increases in defense and related expenditures has made it necessary to convert the excise tax reduction bill passed by the House in June of this year into a bill to raise revenues. [S.Rep.No. 2375, 81st Cong., 2d Sess. (1950), *reprinted in* 1950–2 C.B. 483, 484, and [1950] U.S.Code Cong.Serv., p. 3053.]

has elsewhere in the code, as, for example, in section 23(a)(1). [S.Rep.No. 2375, *supra* note 6, 1950–2 C.B. at 559, [1950] U.S.Code Cong.Serv. at 3165.]

Section 23(a)(1), the predecessor to the present section 162(a), authorized a deduction for expenses incurred in carrying on *any* trade or business.

An amendment to section 513 contained in the Tax Reform Act of 1976[7] provides further indication that sections 511–513 should be interpreted broadly to apply to all businesses falling within the literal meaning of the term "any trade or business." That amendment added subsection 513(d), which expressly excludes two types of noncompetitive businesses—horse racing at county fairs and renting display space at trade shows—from the term "unrelated trade or business." Taxpayer argues that the amendment, along with the Senate Report explaining it, demonstrates a congressional intent to tax only unrelated businesses that compete with taxpaying businesses. A close analysis of the amendment, however, belies Taxpayer's argument. Although the Senate Committee on Finance recognized in its report that the two activities in question did not compete with taxpaying entities, it also emphasized that the activities were related to the exempt purposes of the organizations.[8] Thus, the Senate Report does not support the contention that lack of competition, in itself, excludes an activity from the unrelated business income tax. Moreover, although the Congress in 1950 might not have anticipated that the distinction between competitive and noncompetitive businesses would create uncertainty in interpreting section 513, the amendment indicates that the subsequent Congress did recognize the nature of the problem in 1976. As a solution, however, it chose to carve out only two specific exceptions rather than create a general exception for noncompeting businesses operated by tax-exempt organizations.

The Tax Court's resolution of this issue in *Smith-Dodd Businessman's Association, Inc. v. Commissioner*, 65 T.C. 620 (1975), is in accord with our holding here. The Tax Court held that an exempt organization op-

---

7. Pub.L. No. 94–455, § 1305, 90 Stat. 1520, 1716 (1976).

8. The committee report explained the amendment as follows:

It has come to the committee's attention that, in two instances, the Internal Revenue Service has ruled that activities which are not conducted in competition with commercial activities of taxpaying organizations are nevertheless considered to be unrelated trade or business activities which are subject to the unrelated business income tax. In one case (Rev.Rul. 68–505, 1968–2 C.B. 248), the Service ruled that an exempt county fair association which conducts a horse racing meet with parimutuel betting is carrying on an unrelated trade or business subject to the unrelated business income tax. In another case the Service has held, in a series of revenue rulings (TIR–1409, 1975–2 C.B. 220–226), that income that an exempt business league receives at its convention trade show from renting display space may constitute unrelated business taxable income if selling by the exhibitor is permitted or tolerated at the show.

*The committee does not believe that the activities dealt with in those rulings are generally unrelated to the exempt purposes of the organizations that conduct them.* It is customary for tax-exempt organizations to provide entertainment, incuuding [sic] horse racing, at fairs and expositions in order to attract the public to the educational exhibits on display. In addition, trade associations use trade shows as a means of promoting and stimulating an interest in, and demand for, their industries' products in general. They are also able to educate their members regarding new developments and techniques which are available to the trade.

*In neither case are the exempt organizations exploiting their exempt status in order to compete unfairly with taxpaying organizations.* Generally, horse racing dates are controlled by state authorities and are made available on a state-wide basis to only one organization for any one period. Trade shows are generally conducted only by trade associations and not by taxpaying entities. [S.Rep.No. 94–938, 94th Cong., 2d Sess. (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 3439, 4026 (emphasis added).]

erating a bingo game in St. Paul, Minnesota, was subject to tax on the income from the games. In rejecting the same arguments made by the Taxpayer in the present case, the court noted that "unfair competition plays a relatively insignificant role in the application of the amended unrelated business tax * * *." *Id.* at 624.[9]

Finally, the Treasury Regulation interpreting section 513 supports the view that the section should be read literally and therefore, in the context of this case, expansively. Prior to 1976, that regulation read in relevant part:

(b) *Trade or business.* The primary objective of adoption of the unrelated business income tax was to eliminate a source of unfair competition by placing the unrelated business activities of certain exempt organizations upon the same tax basis as the nonexempt business endeavors with which they compete. In general, any activity of a section 511 organization which is carried on for the production of income and which otherwise possesses the characteristics required to constitute "trade or business" within the meaning of section 162—and which, in addition, is not substantially related to the performance of exempt functions—presents sufficient likelihood of unfair competition to be within the policy of the tax. Accordingly, for the purposes of section 513 the term "trade or business" has the same meaning it has in section 162, and generally includes any

activity carried on for the production of income from the sale of goods or performance of services. [26 C.F.R. § 1.513–1(b) (1975).]

A 1976 change in the regulation added the following after the first sentence of the regulation:

On the other hand, where an activity does not possess the characteristics of a trade or business within the meaning of section 162, such as when an organization sends out low-cost articles incidental to the solicitation of charitable contributions, the unrelated business income tax does not apply since the organization is not in competition with taxable organizations. [26 C.F.R. § 1.513–1(b) (1976).]

Both versions of the regulation focus primarily on the commercial nature of the activity. The references to competition serve merely to explain reasons why an activity that lacks a commercial orientation should not be considered a "trade or business" under either section 162 or section 513. Under the regulation, competition alone does not determine whether an unrelated trade or business should be taxed.

Accordingly, we hold that Taxpayer's income from its bingo games falls within the ambit of sections 511–513 even if the games do not compete with any taxpaying organizations. Taxpayer has, however, raised other defenses to the tax assessed against it, including the claim that its games fall within the exception provided by section 513(a)(1) because they are operated by uncompensated personnel.[10] The district court

---

**9.** Taxpayer cites *Greene County Medical Soc'y Foundation v. United States*, 345 F.Supp. 900 (W.D.Mo.1972), in support of its position. In that case the district court held that income from the production of novelty phonograph records was not taxable because the business was not "competitive with the 'ordinary business' of commercial record production and sales." *Id.* at 901. On appeal, this court affirmed by an unpublished order citing Eighth Circuit Rule 14. Such an affirmance, however, carries no precedential value and is in no way binding upon this court in a subsequent case. *See* 8th Cir. R. 14 and Plan for Publication of

Opinions ¶ 1, 28 U.S.C.A. (Supp.1977). Moreover, the district court opinion is unpersuasive on the issue before us. Although the court mentions the word "competitive," the result rests primarily on the notion that the type of activity in question is one ordinarily not deemed a "trade or business."

**10.** *See* note 1 *supra.* We think it appropriate to note that, because of the three exceptions contained in section 513(a), our holding does not subject the unrelated business income of every tax-exempt organization to taxation. The Government indicates in its brief that the

has not yet addressed these issues. We therefore remand the case to the district court for further proceedings.

Reversed and remanded.

LAY, Circuit Judge, concurring.

I concur.

The legislative history reveals the primary purpose for the adoption of the unrelated business income tax was to eliminate a source of unfair competition by exempt organizations. Nonetheless the critical question under the statute is not the question of unfair competition, but whether the activity constitutes an unrelated "trade or business." If it does, then the Treasury regulations state that this finding constitutes "sufficient likelihood of unfair competition to be within the policy of the tax." 26 C.F.R. § 1.513–1(b) (1976).

No one here challenges the regulations as being unreasonable or invalid.[1] Thus, I agree that the only question is whether the trade or business carried on by the tax exempt organization is unrelated to its principal function. Because conducting bingo games is a trade or business unrelated to the Taxpayer's principal function as a non-profit veterans organization, it follows the Taxpayer should be subject to the tax.

SCHATZ, District Judge, dissenting.

I respectfully dissent.

The unrelated business income taxation provisions of the Internal Revenue Code of 1954 impose a tax on taxable income, as defined by Section 512, derived from any unrelated trade or business, as defined by Section 513, regularly conducted by a tax exempt organization specified in Section 511. The focus of this appeal is whether bingo games conducted by the taxpayer constitute an unrelated trade or business within the meaning of Internal Revenue Code, Section 513. Section 513 provides in part:

> The term "unrelated trade or business" means . . . any trade or business the conduct of which is not substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501
> . . . . .

While Section 513 does specify when a trade or business is "unrelated," the section does not define "trade or business." Therefore, we must examine the history of these provisions and the relationship to the tax laws as a whole to attempt to give meaning to the term "trade or business."

Section 101 of the Internal Revenue Code of 1939 exempted most religious, charitable, scientific, educational and fraternal associations from federal income taxation. Prior to 1950 exempt organizations were acquiring ownership of numerous commercial business enterprises. Because the income from these enterprises was used for exempt purposes, these funds were not taxed. Therefore, such tax exempt organizations were able to charge lower prices than their

---

income from bingo games operated by churches generally is not taxed because churches usually use uncompensated personnel.

1. A regulation which is inconsistent with a governing statute is an invalid exercise of the power delegated by Congress. *See United States v. Cartwright*, 411 U.S. 546, 557, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973). However, a regulation which gives effect to the intent of Congress expressed in the legislative history is proper. *See Commissioner v. Bilder*, 369 U.S. 499, 501–02, 82 S.Ct. 881, 8 L.Ed.2d 65 (1962). We have also recognized that if a Treasury regulation "is a reasonable interpretation of [the Internal Revenue Code] and as such does not distort the intent of Congress, then it must be sustained . . . ." *World Serv. Life Ins. Co. v. United States*, 471 F.2d 247, 250 (8th Cir. 1973).

taxpaying competitors and thereby gain a substantial advantage. Concern was raised that this element of unfair competition could force taxpaying organizations out of business. *See* Revenue Revision of 1950; Hearings before the Committee on Ways and Means, House of Representatives, 81st Cong., 2d Sess., Vol. 1, Excise Taxes, pages 589–592 (hereafter referred to as House Hearings). This concern was reflected in President Truman's tax message to Congress in which he stated:

> Some tax loopholes have also been developed through the abuse of the tax exemption accorded educational and charitable organizations. It has properly been the policy of the Federal Government since the beginning of the income tax to encourage the development of these organizations. That policy should not be changed. But the few glaring abuses of the tax-exemption privilege should be stopped.

> Responsible educational leaders share in the concern about the fact that an exemption intended to protect educational activities has been misused in a few instances to gain competitive advantage over private enterprise through the conduct of business and industrial operations entirely unrelated to educational activities.

House Hearings at 4.

Thereupon Congress enacted a tax upon income of otherwise exempt organizations derived from unrelated trades or businesses as a part of the Revenue Act of 1950. The Senate Report accompanying the bill states in part:

> The problem at which the tax on unrelated business income is directed is primarily that of unfair competition. The tax-free status of section 101 organizations enables them to use their profits tax-free to expand operations, while their competitors can expand only with the profits remaining after taxes. Also, a

number of examples have arisen where these organizations have, in effect, used their tax exemptions to buy an ordinary business. That is, they have acquired the business with little or no investment on their own part and paid for it in installments out of subsequent earnings—a procedure which usually could not be followed if the business were taxable.

> In neither the House bill nor your committee's bill does this provision deny the exemption where the organizations are carrying on unrelated active business enterprises, nor require that they dispose of such businesses. Both provisions merely impose the same tax on income derived from an unrelated trade or business as is borne by their competitors. In fact it is not intended that the tax imposed on unrelated business income will have any effect on the tax-exempt status of any organization. An organization which is exempt prior to the enactment of this bill, if continuing the same activities, would still be exempt after this bill becomes law.

Sen.Rep.No. 2375, 81st Cong. 2d Sess. 1950, 1950 U.S.Code Cong.Serv., p. 3081; *see also* H.Rep.No. 2319 (81st Cong., 2d Sess. pp. 36–37).

The majority points to various passages in the Senate and House Reports to the effect that the Revenue Act of 1950 was intended to raise revenues as a substitute for the War Excise Taxes being repealed and as a means of supporting additional defense spending. While it is undoubtedly true that the Revenue Act as a whole was designed to raise revenue, the Senate Report states:

> The bulk of the additional revenue provided under the [Senate] bill will come from the imposition of higher corporate and individual income-tax rates.

S.R. 2375, 81st Cong., 2d Sess. 1950, reported at 1950 U.S.Code Cong.Serv. p. 3053.

Table I,[1] accompanying Senate Report 2375, strongly supports this statement and indicates that the Senate bill substantially decreased the projected revenue generated by changes in treatment of tax-exempt institutions. Thus it seems that consideration of revenue-raising aspects of the Revenue Act of 1950 ought not to detract from the specific reforms addressed to tax loopholes being used by tax-exempt organizations.

The legislative history of the unrelated business income tax provisions clearly establishes that the provisions were enacted with the primary objective of eliminating unfair competition between exempt and non-exempt organizations. This task was accomplished by taxing only income from regularly carried on trades and businesses which would be directly competitive with non-exempt entities. The activities of exempt organizations were not otherwise disturbed. With certain exceptions, it is clear that Congress was not attempting to inhibit the growth of religious, charitable, scientific, educational or fraternal organizations.

In 1952 the Commissioner of Internal Revenue adopted regulations interpreting the 1950 legislation. The statutes remained unchanged in any material respects in the recodification of the tax laws into the Internal Revenue Code of 1954 as Sections 511 to 513. The regulations remained substantially unchanged until 1967 when new regulations were proposed. Prior to publishing the proposed regulations in 1967, the Internal Revenue Service published a technical information release which stated in part:

> The Internal Revenue Service today announced completion of a major study of the unrelated business income tax appli-

1. Table 1.—*Comparison of the estimated effect of the Finance Committee's bill and the House bill on tax liabilities in a full year of operation and on collections in the fiscal year 1951*

[Increase ( + ) or decrease (–); in millions of dollars]

| | Effect on liabilities in a full year of operation | | Effect on collections in the fiscal year 1951 | |
|---|---|---|---|---|
| | Finance Committee's bill | House bill [1] | Finance Committee's bill | House bill [1] |
| Income taxes: | | | | |
| Corporations: | | | | |
| Rate changes | [2] + 1,500 | [2] + 450 | [2] + 320 | [2] + 177 |
| Accelerated payments | 0 | 0 | + 800 | + 780 |
| Individual income-tax rates | + 2,745 | --------- | + 1,624 | --------- |
| Charitable trusts, family foundations, educational institutions, etc. | + 60 | + 100 | --------- | --------- |
| Miscellaneous loopholes, etc. | + 68 | + 141 | + 18 | + 19 |
| Percentage depletion | --------- | – 35 | --------- | – 15 |
| Life-insurance companies | + 80 | + 70 | + 75 | + 166 |
| Interest rate on refunds | --------- | + 45 | --------- | + 5 |
| Accelerated payment of income taxes of trusts and nonresident aliens | 0 | 0 | + 90 | + 80 |
| Withholding tax on dividends | --------- | + 190 | --------- | + 78 |
| Excise taxes (net) | + 55 | – 910 | [3] + 30 | – 670 |
| Total net change | + 4,508 | + 51 | + 2,957 | + 620 |

[1] These estimates are based on current levels of income and profits and hence differ from the estimates contained in the report of the Committee on Ways and Means.

[2] Net amounts after allowing for reduced individual income taxes because of lower dividends.

[3] Assuming the changes become effective on Oct. 1, 1950.

[4] Assuming the changes become effective on Sept. 1, 1950.

Source: Staff of the Joint Committee on Internal Revenue Taxation.

1950 U.S.Code Cong.Serv. p. 3055.

cable to tax-exempt organizations. Principal areas of attention included the tax status of certain types of trade shows and advertising published in exempt organization periodicals.

  *   *   *   *   *   *

Enacted by Congress in 1950 to eliminate a source of unfair competition, the unrelated business income tax is designed to place the commercial activities of tax-exempt organizations upon the same tax footing as the taxpaying business enterprises with which they compete.

  *   *   *   *   *   *

The proposals accord full weight to the basic Congressional purpose—repeatedly emphasized in the legislative history of the 1950 act—to remove the unfair competitive advantage which tax immunity would confer upon exempt organization businesses.

  *   *   *   *   *   *

The proposed regulations specify that intermittently conducted activities will ordinarily not be considered to be regularly carried on if they are pursued without the competitive and promotional efforts typical of comparable commercial affairs. TIR—899, 4–14–67, reprinted in (1967) Fed. Taxes (P–H) Par. 52,862.

The regulations first proposed in April, 1967, were adopted without substantial change that same year. Treas.Reg. § 1.513–1(b) provided in part:

(b). *Trade or business.* The primary objective of adoption of the unrelated business income tax was to eliminate a source of unfair competition by placing the unrelated business activities of certain exempt organizations upon the same tax basis as the non-exempt business endeavors with which they compete. In general, any activity of a section 511 organization which is carried on for the production of income and which otherwise possesses the characteristics required to constitute "trade or business" within the meaning

of Section 162—and which, in addition, is not substantially related to the performance of exempt functions—presents sufficient likelihood of unfair competition to be within the policy of the tax.

The very first sentence of Reg. 1.513–1(b) indicates that the basic policy of the act which the regulations intend to effect is the elimination of unfair competition between exempt and non-exempt organizations. Section 1.513–1(b) is not alone in focusing directly on the issue of unfair competition. Treas.Reg. 1.513–1(c) provides in part:

(c) *Regularly carried on*—(1) *General principles.* In determining whether trade or business from which a particular amount of gross income derives as "regularly carried on," within the meaning of section 512, regard must be had to the frequency and continuity with which the activities productive of the income are conducted and the manner in which they are pursued. This requirement must be applied in light of the purpose of the unrelated business income tax to place exempt organization business activities upon the same tax basis as the non-exempt business endeavors with which they compete. Hence, for example, specific business activities of an exempt organization will ordinarily be deemed to be "regularly carried on" if they manifest a frequency and continuity, and are pursued in a manner, generally similar to comparable commercial activities of non-exempt organizations.

(2) *Application of principles in certain cases*—(i) *Normal time span of activities.* Where income producing activities are of a kind normally conducted by non-exempt commercial organizations on a year-round basis, the conduct of such activities by an exempt organization over a period of only a few weeks does not constitute the regular carrying on of trade or business.

The government contends that the regulations interpreting Sections 511 through 513 do not exempt non-competitive activities

which constitute a trade or business for the purposes of Section 162.[2]

However, the reference to Section 162 in Reg. 1.513–1(b) must be read in the context of the entire regulation. While it is true that "generally" a trade or business within the meaning of Section 162 is "likely" to compete with taxpaying entities and, therefore, to be subject to the tax, this proposition is subservient to the primary purpose of Section 513 as reflected in the first sentence of the regulation. It may well be that bingo activities would in some circumstances constitute a trade or business for the purposes of Section 162. However, if these activities do not compete with non-exempt business endeavors, taxing these activities would not effect the purpose of Sections 511 to 513 to avoid unfair competition.

It is clear that Congress in its original enactment intended to tax only the competitive activities of exempt organizations and that the Treasury Department in promulgating the regulations of 1967 preserved and gave effect to that intent. The government cannot subsequently disregard its regulations or emphasize those aspects which, when read out of context, support a contrary conclusion. *See Mutual Savings Life Ins. Co. v. United States*, 488 F.2d 1142, 1146 (5th Cir. 1974).

The Tax Reform Act of 1969 changed the unrelated business income tax provisions in essentially two areas. Section 513(c) was amended to provide:

(c) *Advertising, etc., Activities*—For purposes of this section, the term "trade or business" includes any activity which is carried on for the production of income from the sale of goods or the performance of services. For purposes of the preceding sentence, an activity does not lose identity as a trade or business merely because it is carried on within a larger aggregate of similar activities or within a larger complex of other endeavors which

may, or may not, be related to the exempt purposes of the organization. Where an activity carried on for profit constitutes an unrelated trade or business, no part of such trade or business shall be excluded from such classification merely because it does not result in profit.

This section addresses itself specifically to advertising and to the sale of goods or the performance of services, neither of which is involved in conducting bingo games. That the passage of this section manifested a congressional intent to tax such trades or businesses, regardless of whether such activities competed with taxpaying endeavors, is not borne out by the legislative history underlying this section. To the contrary, Congress continued to effect its purpose of avoiding unfair competition between exempt and non-exempt organizations. In that connection, House Report No. 91–413 states in relevant part:

6. *Income from advertising, etc., activities* (Sec. 121 of the bill and Sec. 513 of the code) . . . .. On December 12, 1967, the Treasury Department promulgated regulations under Section 513 of the code concerning the application of the unrelated business tax when the business was a part of a complex of activities which were in the overall carried on in the exercise of the exempt function.

These regulations specified that the carrying on of a business in competition with taxpaying business would be subject to tax although the business was only a part of a much larger endeavor related to the exempt function. Thus, unless the business contributed importantly to the exempt purpose or function, the income derived from its operation would be subject to tax.

. . . Because of the ensuing controversy over this problem, your committee has decided to deal with this subject by legislation. In general, it is in agreement with the purpose of the regulations.

---

**2.** Section 162 permits deductions for the ordinary and necessary expenses of carrying on a trade or business. Because the instant case does not involve the deduction of business ex-

penses, the provisions of Section 162 are not otherwise relevant except insofar as the term trade or business has been construed for purposes of Section 162.

Your committee believes that a business competing with taxpaying organizations should not be granted an unfair competitive advantage by operating tax free unless the business contributes importantly to the exempt function. It has concluded that by this standard, advertising in a journal published by an exempt organization is not related to the organization's exempt functions, and therefore it believes that this income should be taxed. 1969 U.S.Code Cong. & Admin.News, p. 1695.

The other major change affecting the unrelated business income tax provisions was to extend the reach of those provisions to essentially all exempt organizations. In explaining this extension of the unrelated business income tax provisions, the Senate Report[3] stated as follows:

In recent years, many of the exempt organizations not now subject to the unrelated business income tax—such as churches, social clubs, fraternal beneficiary societies, etc.—have begun to engage in substantial commercial activity. For example, numerous business activities of churches have come to the attention of the committee. Some churches are engaged in operating publishing houses, hotels, factories, radio and TV stations, parking lots, newspapers, bakeries, restaurants, etc. Furthermore, it is difficult to justify taxing a university or hospital which runs a public restaurant or hotel or other business and not tax a country club or lodge engaged in similar activity.

1969 U.S.Code Cong. & Admin.News, p. 2096, *Accord,* General Explanation of the Tax Reform Act of 1969, prepared by the staff of the Joint Committee on Internal Revenue Taxation, December 30, 1970, at pp. 66–67.

A careful reading of the provisions of the Tax Reform Act of 1969 does not indicate a change of Congressional intent regarding the policy of the unrelated business income tax statutes. The legislative history surrounding extension of the application of the provisions clearly indicates that Congress never changed its basic purpose, *i. e.,* to eliminate unfair competition between exempt and non-exempt organizations. Rather, the Act reflects a continuation of that primary purpose.[4]

Present Sections 511–513 are an exception to the general rule expressed in Section 501 that exempt organizations shall not be subjected to any tax. As such, these sections must be strictly construed and limited to the situations they were designed to cover. When fairly and closely read, the entire history of the legislation concerning the tax statutes in question demonstrates that if the taxpayer is an organization exempt from federal income tax which engages in fundraising activities unrelated to its exempt purposes, and if these activities do not directly compete with similar activities of taxpaying entities, then such fundraising activities are not taxable.

The taxpayer's bingo games were governed by Minnesota Statutes Annotated, Sections 349.01 through 349.03[5] which limited such games to "religious, charitable, fraternal, or other associations not organ-

3. The Senate bill was adopted in conference, 1969 U.S.Code Cong. & Admin.News, p. 2405.

4. The Tax Reform Act of 1976 further amended Section 513 by adding subsection (d) exempting qualified public entertainment activities including trade shows, state fairs, etc., and subsection (e) exempting certain hospital services from the meaning of unrelated trade or business as used in Section 513. While these amendments are not material to the instant case, the legislative history indicates that Congress enacted these subsections in response to I.R.S. efforts to impose the unrelated business income tax on these activities. The committee

reports clearly indicate that these activities do not substantially compete with taxpaying businesses and so are not within the policy underlying the unrelated business income tax provisions of Sections 511 to 513. *See* 1976 U.S. Code Cong. & Admin.News, pp. 4025–27, 4099 to 4101.

5. In 1976 these provisions were repealed and new statutes governing bingo games in Minnesota enacted. Laws, 1976, Chapter 261 §§ 1–13, Codified at Minn.Stat.Annot. §§ 349.11–349.23.

ized for pecuniary profit, and duly existing under the laws of the State of Minnesota." [6] The case was presented on the theory that the taxpayer, a non-profit organization under Minnesota law, was precluded by law from directly competing with any taxpaying entity in the conduct of its bingo games since only exempt non-profit organizations could conduct such games.

There is no record here of competition between exempt and non-exempt organizations conducting bingo games in Minnesota. The government now asks the Court to take judicial notice of the fact that bingo games indirectly compete with other forms of low-cost entertainment. Alternatively, the government urges that an organization qualifying under Minnesota law to conduct bingo games might nonetheless be denied tax-exempt status by the federal government pursuant to Section 501(i) and thus that the possibility exists for competition between bingo games of taxpaying and tax-exempt organizations. In the absence of any evidence on the record to support these contentions, the government cannot now argue that there was a disputed fact with regard to the issue of competition. It failed to come forward with evidence to substantiate any competition between exempt and non-exempt organizations in the course of the hearing on the motion for summary judgment. When a motion for summary judgment is supported by the movant, an adverse party may not rest upon the mere allegations or denials of his pleadings. Rather, his response by testimony, affidavits or otherwise must set forth the specific facts showing that there is a genuine issue for trial. The government having failed to so respond, it cannot now be heard on this issue. *McCormick v. Ross*, 506 F.2d 1205, 1208 (8th Cir. 1974); *Cervantes v. Time, Inc.*, 464 F.2d 986, 993 (8th Cir. 1972); *Marion County Coop Ass'n v. Carnation Co.*, 214 F.2d 557 (8th Cir. 1954); *Sound Ship Building Corp. v. Bethlehem Steel Co.*, 533 F.2d 96 (3d Cir. 1976); *United States v. Dooley*, 424 F.2d 1067 (5th Cir. 1970).

The government relies upon *Smith-Dodd Businessmen's Association, Inc. v. Commissioner*, 65 T.C. 620 (1975), a tax court decision involving a Minnesota exempt organization conducting bingo games which the I.R.S. treated as an unrelated trade or business income for purposes of Sections 511 to 513. The petitioner in *Smith-Dodd* contended that because it did not compete with taxpaying organizations, its activities did not constitute a trade or business. It would appear that the tax court conceded the lack of competition but went on to hold that the bingo activities nevertheless constituted an unrelated trade or business, finding that unfair competition plays a relatively insignificant role in the application of the statute. The court further declined to measure the applicability of the enactment by its legislative history. I disagree with the Tax Court's assessment of the role of competition in the unrelated business income definition and with its conclusion. I would, therefore, decline to follow the reasoning of the tax court in *Smith-Dodd Businessmen's Association v. Commissioner.*

I would affirm the district court determination that income from the taxpayer's bingo games is not taxable as unrelated business income.

---

**6.** Minn.Stat.Annot. § 349.03 (1974).