WACO LODGE NO. 166, BENEVOLENT
& PROTECTIVE ORDER OF
ELKS, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 82–4174

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1983.

Jane R. Matyastik, Cameron, Tex., for petitioner.

Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., Michael L. Paup, Robert A. Bernstein, Libero Marinelli, Jr., Attys., John H. Menzel, Director, Tax Litigation Div., Dept. of Justice, Washington, D.C., for respondent.

Before BROWN, REAVLEY and JOLLY, Circuit Judges.

PER CURIAM:

On 49 weeknights during the 1976 fiscal year, Waco Lodge No. 166 of the Benevolent & Protective Order of Elks held profit-making bingo games. The question before us is whether these profits are subject to taxation as income from a trade or business unrelated to the Lodge's tax-exempt purpose. The Tax Court found that they were and upheld the Internal Revenue Service's assessment of a $647.66 tax deficiency. We affirm.

The Lodge, a unit of a national fraternal organization, is exempt from most federal internal revenue taxes under 26 U.S.C.A. §§ 501(a) and (c)(8) (West 1967).[1] During the 1976 fiscal year, it operated a lodge building, consisting of a meeting room, bar, lounge, and kitchen, which was open four nights a week. One night a week, the Lodge conducted a bingo game in the building's meeting hall. Attendance at the games was limited to Lodge members and their guests, who needed only to attend once with a member and sign a registration book. The guests could then attend future games unaccompanied, and without reregistering. An average of 35 people attended each game.

At least five people—a caller, two collectors, and two cashiers—worked in the operation of each bingo game. On 20 of the 49 nights, the caller was a non-member who was paid $10 for the evening's work. The remaining workers were members who were not compensated monetarily, but who were allowed to have free beverages from the bar while working the game. The bartender himself, a non-member, was paid an hourly wage.

In 1978, an Internal Revenue Service auditor asked the Lodge to file a supplementary income tax return for its 1976 fiscal year. Under protest, at the auditor's direction, the bingo receipts were listed as unrelated business income for the purposes of the unrelated business income tax.[2] The Lodge listed deductions for game expenses, bar losses for all nights, including non-bingo nights, and 67% of the building's deprecia-

---

1. **§ 501. Exemption from tax on corporations, certain trusts, etc.**

    **(a) Exemption from taxation.**—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502, 503, or 504.

    \*    \*    \*    \*    \*    \*

    **(c) List of exempt organizations.**—The following organizations are referred to in subsection (a):

    \*    \*    \*    \*    \*    \*

    (8) Fraternal beneficiary societies, orders, or associations—

    (A) operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system, and

    (B) providing for the payment of life, sick, accident, or other benefits to the members of such society, order, or association or their dependents.

2. Section 511 of the Internal Revenue Code imposes a tax on the unrelated trade or business income of tax-exempt organizations. Section 513 of the Code defines an unrelated trade or business. Section 513 provides:

    **(a) General rule.**—The term "unrelated trade or business" means, in the case of any organization subject to the tax imposed by section 511, any trade or business the conduct of which is not substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501 (or, in the case of an organization described in section 511(a)(2)(B), to the exercise or performance of any purpose or function described in section 501(c)(3)), except that such term does not include any trade or business—

    (1) in which substantially all the work in carrying on such trade or business is performed for the organization without compensation; or

    (2) which is carried on, in the case of an organization described in section 501(c)(3) or in the case of a college or university described in section 511(a)(2)(B), by the organization primarily for the convenience of its members, students, patients, officers, or employees; or

    (3) which is the selling of merchandise, substantially all of which has been received by the organization as gifts or contributions.

tion costs. The Lodge's computations showed that it owed $132.83 in taxes, which it paid under protest. Upon auditing that return, the IRS disallowed the depreciation expenses and three-fourths of the bar operation losses, and assessed a tax deficiency of $647.66, along with a late penalty of $161.91. The Tax Court, hearing the Lodge's appeal, struck down the late filing penalty [3] and upheld the $647.66 additional tax assessment.[4] *Waco Lodge No. 166 v. Commissioner,* 42 T.C.M. (CCH) 1202 (1981).

On appeal to this court, the Lodge reurges several arguments presented to the Tax Court:

(1) The bingo games were not a trade or business because they were restricted to Lodge members and their guests;

(2) Even if a trade or business, the games are statutorily exempt from taxation because substantially all the work was performed without compensation;

(3) If the games are subject to tax under the Code, losses from the bar operation for all four nights of the week should be allowed as an offset to bingo game profits.

We consider, and reject, these arguments in the order presented.

■ An exempt organization has unrelated trade or business income if:

(1) It is income from trade or business;

(2) such trade or business is regularly carried on by the organization; and

(3) the conduct of such trade or business is not substantially related (other than through the production of funds) to the organization's performance of its exempt function. Section 1.513–1(a), Income Tax Regs. The Lodge admits that the games were a regular activity and that they were unrelated to the Elks' exempt purpose. It contends, however, that the games were

private and consequently not a "trade or business."

This Court has never decided the question of whether bingo games regularly conducted for profit are a "trade or business" under the Internal Revenue Code. Section 513(c) of the Code states, however, that "the term 'trade or business' includes any activity which is carried on for the production of income from the sale of goods or the performance of services." 26 U.S.C. § 513(c) (Supp.1982). The Lodge's activities fall squarely within that definition.

This result is in accord with the Eighth Circuit's decision in *Clarence LaBelle Post No. 217 v. U.S.,* 580 F.2d 270 (8th Cir.1978). In *Clarence LaBelle,* the Court held that the proceeds of a public bingo game operated by a V.F.W. post were taxable as income from an unrelated trade or business despite the fact that the games did not compete with any tax paying entity. *See also Smith-Dodd Businessman's Association, Inc. v. Commissioner of Internal Revenue,* 65 T.C. 620 (1975).

The Lodge argues that "private" games cannot be a trade or business under the Code. It offers no support for that proposition, however, and we hold to the contrary. The language of § 513(c) contains no such limitation. If the activity in question comes within the language of the statute and the Treasury Regulations, it is to be considered a trade or business whether or not it is limited to "members only." [5]

The Lodge argues that substantially all the work of its games was performed by uncompensated personnel, thus exempting it under § 513(a)(1) from taxation.

■ The Tax Court held that the availability of free beverages to the rest of the workers by itself is sufficient "compensation" to prevent the Lodge from taking advantage of the statutory exemption. In

3. The Commissioner does not appeal the court's deletion of the late filing penalty.

4. The trial court also determined that 26 U.S.C. § 513(f), the so-called "bingo exception," did not exempt the Lodge from taxation, because the bingo games were illegal under Texas law.

The Lodge does not challenge that determination.

5. We are convinced, moreover, as the court below held, that the Lodge's games were not private in any meaningful sense. Once invited

the Tax Court's view, any monetary or non-monetary payment, no matter how small, equals "compensation" under the code. The question of whether non-monetary "payment" equals "compensation," however, must be decided on the facts of each case. As calculated by the Tax Court, the cost of the free beverages consumed averages to approximately $2.22 per worker, per night, or about 63 cents an hour. It cannot seriously be argued that the workers were induced to work for this "compensation." We do not believe that the Code's definition of compensation was meant to include such a trifling inducement.

Nevertheless, we agree with the Tax Court judge that a substantial percentage of the work performed at the bingo games was compensated. The bartender, and on many nights, the caller, indisputably were compensated for their work. As the Tax Court judge found, together their services add up to approximately 21% of the work performed,[6] a substantial figure. The Lodge points to the fact that the bartender worked four nights per week, bingo or no, and contends that he should not be considered part of the bingo personnel. The Lodge admits, however, that on bingo nights the games were usually the only activity in the Lodge. The cashiers, checkers, and sometimes callers were given free beverages from the bar. The main part of the bar's business on those nights came from the people playing bingo. The operation of the bar was an attraction important to the success of the weekly bingo nights. The court below correctly held that on those nights the bartender was part of the workforce of the bingo game. The exception for trades or businesses in which substantially all the work is performed without compensation does not apply to the Lodge's bingo games.

The Lodge argues finally that the bar's operational losses for all four weeknights should be deducted from its unrelated trade or business income. We find no merit in this argument. One night per week the operation of the bar contributed to and was clearly entwined with the ongoing trade or business—the bingo games. On the other three nights, there were no games, and the bar, which continued to operate, had nothing at all to do with any unrelated trade or business. The court below properly rejected the Lodge's claim that it is entitled to deduct the bar's losses from these nights from its unrelated trade or business income. The court correctly upheld the Commissioner's assessment of a $647.66 tax deficiency against the Lodge.

AFFIRMED.

6. The accuracy of this calculation is not disputed by either party.

as a guest, a player could return as many times as he liked unaccompanied without reregistering. For all practical purposes, the games were open to the public.