**The HOPE SCHOOL, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 79–1239.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 12, 1979.

Decided Jan. 2, 1980.

---

Ronald N. Heftman, Chicago, Ill,, for plaintiff-appellant.

Libero Marinelli, Jr., Tax Div., Dept. of Justice, Washington, D.C., for appellee.

Before FAIRCHILD, Chief Circuit Judge, and SWYGERT and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

█ The issue raised in this appeal is whether a tax-exempt organization's solicitation of contributions through the mailing of greeting cards to potential contributors constitutes an unrelated trade or business within the meaning of sections 511–13 of the Internal Revenue Code. We hold that it does not and reverse the judgment below.

I

The Hope School is a non-profit charitable and educational organization exempt from federal income tax under 26 U.S.C. § 501(c)(3). For the tax years 1968 through 1970, the Commissioner assessed against the School an unrelated business income tax deficiency because of funds it received as the result of a contributions solicitation campaign. Taxpayer paid the $238,465.91 assessed and instituted a refund action in the United States District Court for the Southern District of Illinois, arguing that proceeds from the campaign were not unrelated business income as defined in 26 U.S.C. §§ 511–13. A jury entered a verdict for the Government and Taxpayer appealed.

Dr. Charles E. Jordan founded the Hope School in 1957 after unsuccessful attempts to find a suitable school for his daughter who was born blind and severely brain damaged. Although the School was originally located in one room in a residential dwelling, it gradually grew into a 25 acre facility which, during the tax years in question, cared for 76 children with severe, multiple handicaps.[1] In the first years, Dr. Jordan was the primary source of financing for the School, investing between $350,000 and $400,000 of his personal money to pay medical expenses and the salaries of the personnel. Tr. 86.[2] In the early 1960's, after he had tried unsuccessfully to solicit contributions from several foundations and organizations, Dr. Jordan was contacted by Mr. Bernard Gerchen, the President of American Mailing Consultants, with a plan for soliciting contributions from the public at large.

Pursuant to that original plan worked out by Mr. Gerchen and the Board of Directors of the Hope School, American Mailing sent out packages of greeting cards to prospective donors, with information about the School and a request for contributions. The recipients of the cards were under no obligation to give any money to the School and were free to keep the cards at no charge. American Mailing bore the entire economic risk of the operation: when the recipients of the cards kept the package without making a contribution, American Mailing suffered the loss. When contributions were received, however, American Mailing kept the first $1.10 per package, with all the surplus going to the Hope School.[3]

The cards were mailed out twice a year and included a form to be used if a recipient wished to order additional packages. American Mailing managed the entire operation. It printed, packaged and mailed the greeting cards and the accompanying solicitation letter. No Hope School employees were involved in any way with the production or mailing of the cards.

Each package of cards distributed during the tax years in question contained a remittance envelope for contributions. The envelope was addressed to the Hope School, at a box maintained by it at the Illinois National Bank in Springfield, Illinois. Bank personnel opened the envelopes and deposited a portion of each contribution into the respective accounts of American Mailing and the Hope School.

---

1. Like Dr. Jordan's daughter, all of the children attending the School suffered from damage to the mid-brain and were too severely handicapped to be cared for in most other schools for the handicapped.

2. References to the transcript of the trial below will hereinafter be cited as "Tr. . . . .."

3. In the solicitation letter used during the tax years in question, Dr. Jordan stated:

> Your gift of $2.00—$3.00—$5.00—whatever your heart prompts you to send—is needed and appreciated.

Plaintiff's Exhibit No. 7–A, App. 7. (All references to the appendix will hereinafter be cited as "App. . . . ..")

In assessing the unrelated business tax against the School, the Service classified as income the amount received from the mailing of a single box of cards that was less than or equal to $2.00. Any money received in excess of $2.00 per box was considered a donation.

## II

The Government contends that the proceeds from these solicitations constitute income from an unrelated business and are therefore taxable under sections 511–13 of the Internal Revenue Code. The School, on the other hand, relies on sections 512–13 and the accompanying Treasury Regulations to support its contention that it was not engaged in the operation of a trade or business at all.

Sections 511–12 set forth the basic premise that some otherwise tax-exempt organizations shall be taxed on income derived from the regular operation of any unrelated trade or business. In defining "unrelated trade or business," section 513 refers to any trade or business the conduct of which is not substantially related to the tax-exempt purpose of the organization. Neither party disputes that the proceeds in question are the product of a regularly conducted activity which is *not* substantially related to the purpose of the Hope School;[4] rather, the controversy stems from whether the proceeds were the product of a regularly conducted trade or business.

The Internal Revenue Code nowhere gives a precise definition of "trade or business," but some guidelines can be gleaned from the Treasury Regulations and case law. In regulation § 1.513–1(b), the Service states that the same standard applies for determining whether an activity constitutes a trade or business for purposes of section 513 as for purposes of section 162.[5] More-

over, the regulation states that "an activity *does not* possess the characteristics of a trade or business within the meaning of section 162 . . . when an organization sends out low cost articles incidental to the solicitation of charitable contributions." 26 C.F.R. § 1.513–1(b) (emphasis added). In *McDowell v. Ribicoff*, 292 F.2d 174, 178 (3d Cir.), *cert. denied*, 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 135 (1961), a case discussing the requirements for a trade or business under section 162, the court elaborated further:

> The phrase "trade or business" connotes something more than an act or course of activity engaged in for profit. Indeed, the Internal Revenue Code itself . . . distinguishes between a "trade or business" on the one hand and a "transaction entered into for profit" on the other.

*Id.* See also *Deputy v. duPont*, 308 U.S. 488, 499, 60 S.Ct. 363, 84 L.Ed. 416 (1940) (Frankfurter, J., concurring).

■ From these guidelines, it is evident that the facts of each case—as determined by the court below—must be examined closely before labelling an activity as a trade or business. While the trier of fact must determine what the activities of a taxpayer are, appellate courts must determine, as a matter of law, whether those activities constitute a trade or business. As Justice Frankfurter said in *Deputy v. duPont*, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940) (Frankfurter, J., concurring):

> Whether [a taxpayer's] activities constitute a "trade or business" . . . is open for determination [by appellate courts] unfettered by findings and rulings below . . . .

*Id.* at 499, 60 S.Ct. at 369. See also *United States v. Pyne*, 313 U.S. 127, 129, 61 S.Ct. 893, 85 L.Ed. 1231 (1941). Consequently, we must examine Taxpayer's activities to determine whether they were properly clas-

---

**4.** Section 513(a) expressly states that for unrelated business tax purposes, an activity is not substantially related to an organization's exempt function merely because of "the need of such organization for income or funds or the use it makes of the profits derived . . . ." 26 U.S.C. § 513(a).

**5.** Section 162 reads in pertinent part:
There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . . .
26 U.S.C. § 162(a).

sified as a regularly conducted trade or business.

## A

Taxpayer purchased greeting cards from American Mailing Consultants; those greeting cards were sent out to prospective donors by American Mailing with requests for contributions from the Hope School. In the solicitation letter sent during the tax years in question and signed by Dr. Jordan, he stated:

> Please keep this specially prepared assortment of cards as a gift to you from Hope School. It is our way of thanking you for your interest and much needed assistance. We must, of course, pay for the cards and the mailing service.

Plaintiff's Exhibit No. 7–A, App. 7.

Taxpayer contends that the language of the letter is clear evidence that it was not selling greeting cards, but was instead distributing them incidental to the solicitation of charitable contributions within the meaning of regulation § 1.513–1(b). The Government, on the other hand, urges that we classify the solicitation campaign as a "trade or business," relying instead on the language of the original contract between American Mailing and the School. In that contract, the parties referred to those receiving cards in the mail as "customers," and to the cards themselves as "purchased merchandise from Hope School." Gov't. 4–6.[6] Moreover, the Government contends that, despite the label given by the School in the solicitation letter, the greeting cards were not a gift to their recipients and were not low cost articles distributed incidental to the solicitation of charitable contributions.

■ Our research has revealed no case or published revenue ruling which has attempted to define the phrase "low cost articles incidental to the solicitation of charitable contributions." In its brief, however, the Government suggests that for income to the School to be exempt from taxes, the distribution of greeting cards must meet the tests articulated in cases which define

"gifts" for income tax purposes. See Gov't. 23–26. Moreover, the Government suggests that the money received by the School is taxable unless it is legally deductible by the donor as a charitable contribution. According to the Government, its "computation of the tax [assessed against the School] was based on the premise that everything in a customer response in excess of $2.00 per box was a charitable contribution, rather than a part of the purchase price for a box of cards." Gov't. 18. This analysis by the Government is much too narrow and, if adopted, would completely emasculate the exception in regulation § 1.513–1(b).

According to the cases cited by the Government, a gift is a property transfer made in the spirit of "detached and disinterested generosity," see *Commissioner v. Duberstein*, 363 U.S. 278, 285, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); *Commissioner v. LoBue*, 351 U.S. 243, 246, 76 S.Ct. 800, 100 L.Ed. 1142 (1956), and does not include any transfers made with the expectation of economic benefit. See *Winters v. Commissioner*, 468 F.2d 778, 780–81 (2d Cir. 1972); *Stubbs v. United States*, 428 F.2d 885, 887 (9th Cir. 1970), *cert. denied*, 400 U.S. 1009, 91 S.Ct. 567, 27 L.Ed.2d 621 (1971). By definition, a low cost article given "incidental to the solicitation of charitable contributions" is *not* distributed with "detached and disinterested generosity" because it *is* distributed with the expectation of economic benefit. Consequently, for the exception in the regulation to have any meaning whatsoever, the definition of "gift" cannot be controlling.

## B

The question remains, however, whether the greeting cards can be classified as "low cost articles incidental to the solicitation of charitable contributions." As we stated above, we can find no case or revenue ruling which attempts to define the phrase. We do get some guidance, however, from viewing the phrase in the context of the regulation. The regulation reads in pertinent part:

---

**6.** All references to the Government's Brief will hereinafter be cited as "Gov't. . . . . .."

The primary objective of adoption of the unrelated business income tax was to eliminate a source of unfair competition by placing the unrelated business activities of certain exempt organizations upon the same tax basis as the nonexempt business endeavors with which they compete. *On the other hand, where an activity does not possess the characteristics of a trade or business within the meaning of section 162, such as when an organization sends out low cost articles incidental to the solicitation of charitable contributions, the unrelated business income tax does not apply since the organization is not in competition with taxable organizations.*

26 C.F.R. § 1.513–1(b) (emphasis added). Although the regulation still gives no definition of "low cost articles," it does, when read as a whole, suggest that the definition is intertwined with the idea of unfair competition.

The unfair competition link is further strengthened by an examination of the legislative history surrounding the unrelated business tax provisions. Congress first enacted those provisions as part of the Revenue Act of 1950. In Senate Report No. 2375, the Committee made the following statement:

The problem at which the tax on unrelated business income is directed is primarily that of unfair competition. The tax-free status of section 101 [now section 501] organizations enables them to use their profits tax-free to expand operations, while their competitors can expand only with the profits remaining after taxes. Also, a number of examples have arisen where these organizations have, in effect, used their tax exemptions to buy an ordinary business. That is, they have acquired the business with a little or no investment on their own part and paid for it in installments out of subsequent earnings—a procedure which usually could not be followed if the business were taxable.

Sen. Rep. No. 2375, 81st Cong., 2d Sess., *reprinted in* 1950 U.S. Code Cong.Serv., 3053, 3081.

We find further evidence in the Senate Report for the Tax Reform Act of 1969 that the unrelated business tax was aimed at curbing unfair competition. For example, although Congress decided to expand the list of organizations subject to the unrelated business tax, it agreed not to expand coverage to certain unrelated businesses where certain requirements were met:

The committee amendments provide that the unrelated business income tax is not to apply to a religious order or to an educational institution maintained by such a religious order that has operated an unrelated business . . . *[if] it is established to the satisfaction of the Secretary . . . that rates and other charges and services provided by such a business are fully competitive with and do not exploit similar businesses . . .*

Sen. Rep. No. 91–552, 91st Cong., 1st Sess., *reprinted in* 1969 U.S. Code Cong. & Admin. News 2027, 2099 (emphasis added). Indeed, the first express mention of the "low cost articles" exception can be found in the Senate Report for the 1969 amendments:

The Committee, also, intends that when organizations send out low cost articles incidental to the solicitation of charitable contributions, the amounts received are not to be considered as being in exchange for the low cost articles where it is clear that the contributions, less a reasonable administrative cost, fully accrue to the exempt organization.

Sen. Rep. No. 91–552, 91st Cong., 1st Sess., *reprinted in* 1969 U.S. Code Cong. & Admin. News 2027, 2100.

The Government urges, however, that unfair competition is not the proper touchstone for our analysis because of the decision in *Clarence LaBelle Post No. 217 v. U. S.,* 580 F.2d 270 (8th Cir.), *cert. dismissed,* 439 U.S. 1040, 99 S.Ct. 712, 58 L.Ed.2d 716 (1978). In *LaBelle,* the Eighth Circuit held that unfair competition is not the sole criterion to be considered in applying the unrelated business tax. Although the issue before it was whether the pro-

ceeds of bingo games should be taxed, the court referred in its analysis to the "low cost articles" exception:

> The references to competition serve merely to explain reasons why an activity that lacks a commercial orientation should not be considered a "trade or business" under either section 162 or section 513. Under the regulation, competition alone does not determine whether an unrelated trade or business should be taxed.

580 F.2d at 274. To the extent the court held that unfair competition is not the *only* factor to be considered, we support its holding. See *Carle Foundation v. U. S.*, No. 79–1273, 611 F.2d 1192 at 1196 n. 6 (7th Cir. 1979). However, to the extent that *LaBelle* may hold that unfair competition is not the *primary* consideration, we disagree.

Our position is supported by the 1978 amendments to the Tax Code which overruled findings in cases like *LaBelle* that proceeds from bingo games were taxable as unrelated business income. In giving reasons for changing section 513 to provide expressly that "[t]he term 'unrelated trade or business' does not include . . . bingo games," see 26 U.S.C § 513(f), the House Ways and Means Committee stated:

> In general, the unrelated business income tax was imposed to prevent tax-exempt organizations from having an unfair competitive advantage over taxable businesses. . . . Accordingly, the committee has concluded that tax-exempt organizations . . . should not be subject to tax on proceeds of bingo games if the organization's conduct of such games . . . does not compete with bingo games carried on by for-profit businesses.

H. Rep. No. 95–1608, 95th Cong., 2d Sess., *reprinted in* 1978 U.S. Code Cong. & Admin. News 3716, 3718.

This evidence in the legislative history, coupled with the Service's express mention of unfair competition in the context of the "low cost articles" exception supports our conclusion that unfair competition is the key to whether the activities of the Hope School constitute an unrelated trade or business as a matter of law. We hold that they do not.

There was no evidence presented at trial to suggest that Hope School's solicitation campaign presented the possibility of an unfair competitive advantage over taxpaying greeting card businesses. In fact, the Government conceded at trial that the net proceeds from the campaign were used for the benefit of the School, see Tr. 234; the School did not reinvest the proceeds into a greeting card business.[7]

No hard and fast rule can be formulated to determine whether an activity falls within the "low cost articles" exception; rather, the facts must be viewed as a whole, keeping in mind the congressional concern with unfair competition. We find no problem with unfair competition in this case and hold that, as a matter of law, the greeting cards were distributed as low cost articles incidental to the solicitation of charitable contributions.

## III

In urging that we classify the Taxpayer's activities as a trade or business, the Government places much emphasis on the inclusion of a card reorder form in each package mailed. We find that the mere existence of that form does not convert the mailing campaign into a trade or business. Whether the proceeds from "reordered" cards would properly be classified as income derived from an unrelated trade or business

7. In 1947, a group of benefactors purchased the C. F. Mueller Company, the nation's largest manufacturer of noodles, to be operated solely for the benefit of the New York University School of Law. Because the business was operated solely for a charitable purpose, its income was held to be tax exempt. *C. F. Mueller Co. v. Commissioner*, 190 F.2d 120 (3d Cir. 1951). This gave the Mueller Company a substantial competitive advantage over competing manufacturers of noodles. See Comment, *The Macaroni Monopoly: The Developing Concept of Unrelated Business Income of Exempt Organizations*, 81 Harv.L.Rev. 1280 (1968). Recognition of the anticompetitive effect of this loophole led Congress to enact the predecessors to sections 511–513 in the Revenue Act of 1950.

is a question we need not decide. All of the income in controversy here was received in response to cards originally sent out. There is no evidence of any income received pursuant to the reorder form. And if the existence of the reorder form seems to clothe Taxpayer's activities with an attribute of a trade or business, the facts as a whole militate against any such inference. The recipients were under no obligation to give any money whatsoever.

We find it unnecessary to address the other arguments advanced by the parties. Based on the foregoing analysis, we hold that, as a matter of law, the activities of Taxpayer do not constitute a trade or business.[8]

REVERSED.

8. Insofar as this opinion may disagree with *Clarence LaBelle Post No. 217 v. U. S.*, 580 F.2d 270 (8th Cir. 1978), it has been circulated among all judges for this court in regular active service. A majority did not favor a rehearing in banc on that question.