**HENRY E. & NANCY HORTON BARTELS TRUST FOR the BENEFIT OF the UNIVERSITY OF NEW HAVEN, Kenneth G. Bartels, John P. Loehmann, Philip H. Bartels, Marilou McLaughlin & Lawrence J. Denardis, Trustees, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**Docket No. 98–6141**

United States Court of Appeals, Second Circuit.

Argued: March 24, 1999

Decided: April 11, 2000

**148**

Philip H. Bartels (Holland Kaufmann & Bartels, LLC), Greenwich, CT, for Plaintiff–Appellant.

Paula K. Speck for Loretta C. Argrett, Assistant Attorney General, Tax Division, Department of Justice, Washington, DC, (Kenneth L. Greene and Stephen C. Robinson, United States Attorney for the District of Connecticut, of counsel, on the brief), for Defendant–Appellee.

Before: PARKER and POOLER, Circuit Judges, and WEXLER,* District Judge.

WEXLER, District Judge:

Plaintiff-appellant The Henry E. & Nancy Horton Bartels Trust for the Benefit of the University of New Haven ("Taxpayer"), appeals from a judgment of the United States District Court for the District of Connecticut (Eginton, J.), upon an order granting Taxpayer's motion for reconsideration and, on reconsideration, affirming an order granting the government's motion for summary judgment and denying Taxpayer's cross-motion for summary judgment in Taxpayer's refund action. Because we agree with the district court that Taxpayer's securities purchased on margin constitute debt-financed property and that income derived therefrom is subject to the unrelated business income tax ("UBIT")

under §§ 511–14 of the Internal Revenue Code ("Code"), 26 U.S.C. §§ 511–14, we affirm.

## I. BACKGROUND

The relevant facts, which are undisputed, may be summarized as follows: Taxpayer was created by a Declaration of Trust, dated November 30, 1988. The Internal Revenue Service ("IRS") granted Taxpayer tax-exempt status under § 501(c)(3) of the Code on April 24, 1989. Taxpayer was formed to provide support for the University of New Haven ("UNH") and qualified as a "supporting organization" under § 509(a)(3) of the Code. The Declaration of Trust gave Taxpayer's trustees broad discretion in investing its funds.

During the 1991, 1992, and 1993 tax years, Taxpayer invested in securities purchased "on margin," i.e., using funds borrowed from Taxpayer's stockbroker, Gilder, Gagnon, Howe & Co. ("Gilder, Gagnon"). In January 1995, Taxpayer filed Form 990–T, Exempt Organization Business Income Tax Return, for tax years 1991, 1992, and 1993, showing unrelated business income tax due on income derived from its margin-financed securities of $417, $2,948, and $6,123, respectively. Taxpayer paid the tax in full, with interest and penalties, but on May 22, 1995, Taxpayer filed a claim for refund of those payments. On April 25, 1996, the IRS denied taxpayer's refund claim. Taxpayer then brought this refund action.

In the district court, the government filed a motion for summary judgment, and Taxpayer filed a cross-motion for summary judgment. On March 17, 1998, the district court entered an order granting the government's motion and denying Taxpayer's cross-motion. The district court ruled that Taxpayer's income derived from securities

* The Honorable Leonard D. Wexler, Senior District Judge for the Eastern District of New York, sitting by designation.

purchased on margin is unrelated business taxable income under § 511 of the Code.

Taxpayer moved for reconsideration. The district court granted the motion for reconsideration and, on reconsideration, affirmed its earlier order. Judgment was entered, and Taxpayer filed this appeal.

We now affirm the district court's judgment.

## II. *DISCUSSION*

### A. *Standard of Review*

■ We review the district court's grant of the government's motion for summary judgment and denial of Taxpayer's cross-motion for summary judgment *de novo*. *Eisenberg v. Commissioner*, 155 F.3d 50, 53 (2d Cir.1998).

### B. *Unrelated Business Income Tax*

An organization exempt from tax under § 501 of the Code may be subject to the UBIT on income it derives from a trade or business unrelated to its exempt purpose. *See* 26 U.S.C. § 501(b). Section 511(b) imposes the UBIT on tax-exempt trusts for "unrelated business taxable income," as defined in § 512. *Id.* § 511(b). Under § 512(a), "unrelated business taxable income" is defined, in general, as the "gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions ... directly connected with the carrying on of such trade or business." *Id.* § 512(a)(1). Section 513, in turn, defines "unrelated trade or

business" to include any trade or business "the conduct of which is not substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501"—subject to certain exceptions not applicable here. *Id.* § 513(a).

As a general rule, § 512 excludes from tax passive investment income, such as interest, dividends, and royalties, received by exempt organizations. Nevertheless, such investment income is taxable if derived from "debt-financed property," as defined in § 514. Thus, while § 512(b) generally excludes certain items of income from "unrelated business taxable income,"[1] it nullifies these exclusions for income derived from "debt-financed property," providing: "Notwithstanding paragraph (1), (2), (3), or (5), in the case of debt-financed property (as defined in section 514) there shall be included, as an item of gross income derived from an unrelated trade or business, the amount ascertained under section 514(a)(1)...." *Id.* § 512(b)(4). Section 514(a)(1) requires that income earned from "debt-financed property" be treated as income derived from an unrelated trade or business (in the proportion that the basis of the property bears to the amount financed) for purposes of determining unrelated business taxable income. *Id.* § 514(a)(1).[2] The taxability

---

1. For example, subsection (b)(1) excludes, *inter alia*, dividends and interest; subsection (b)(2) excludes royalties; subsection (b)(3) excludes certain rents; and subsection (b)(5) excludes certain gains from the sale, exchange, or other disposition of property. 26 U.S.C. § 512(b)(1), (2), (3), (5).

2. Section 514(a)(1) provides:
   (a) Unrelated debt-financed income and deductions.—In computing under section 512 the unrelated taxable income for any taxable year—
   (1) Percentage of income taken into account.—There shall be included with re-

spect to each debt-financed property as an item of gross income derived from an unrelated trade or business an amount which is the same percentage (but not in excess of 100 percent) of the total gross income derived during the taxable year from or on account of such property as (A) the average acquisition indebtedness (as defined in subsection (c)(7)) for the taxable year with respect to the property is of (B) the average amount (determined under regulations prescribed by the Secretary) of the adjusted basis of such property during the period it is held by the organization during such taxable year.

of income from debt-financed property has no effect on the tax-exempt organization's tax-exempt status, but the income the organization derives from debt-financed property is subject to the UBIT as income from an unrelated trade or business. *See id.* § 501(b).

"Debt-financed property" is defined as "any property which is held to produce income and with respect to which there is an acquisition indebtedness (as defined in subsection (c)) at any time during the taxable year." *Id.* § 514(b)(1). Expressly excluded from debt-financed property is "any property substantially all the use of which is substantially related (aside from the need of the organization for income or funds) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501." *Id.* § 514(b)(1)(A)(i).

Section 514(c)(1), in turn, defines "acquisition indebtedness" generally as "the indebtedness incurred by the organization in acquiring or improving [debt-financed property]." *Id.* § 514(c)(1)(A). Expressly excluded from acquisition indebtedness is "indebtedness the incurrence of which is inherent in the performance or exercise of the purpose or function constituting the basis of the organization's exemption, such as the indebtedness incurred by a credit union described in section 501(c)(14) in accepting deposits from its members." *Id.* § 514(c)(4).

## C. *Imposition of UBIT on Taxpayer's Income Derived from Securities Purchased on Margin*

Taxpayer argues that the income it derived from securities purchased on margin is not subject to the UBIT because: (1) Taxpayer's securities investment activities, including margin trading, do not constitute conduct of a "trade or business" under the Code; (2) neither Taxpayer nor any third-party (*i.e.,* UNH or Gilder, Gagnon) de-

rived a direct or indirect "unfair competitive advantage" over taxable entities from Taxpayer's margin trading and the income derived therefrom; (3) Taxpayer's securities purchased on margin are not "debt-financed property" under § 514(b)(1); and (4) the exceptions to "debt-financed property" and "acquisition indebtedness" under § 514(b)(1)(A)(i) and § 514(c)(4), respectively, apply to exclude Taxpayer's income derived from securities purchased on margin from the UBIT. We disagree with Taxpayer's arguments, each of which we address below, and hold, as did the district court, that Taxpayer's income derived from margin-financed securities is subject to the UBIT under §§ 511–14 of the Code.

### 1. *Unrelated Trade or Business*

■ Taxpayer initially argues that its securities investment activities, particularly its margin trading, do not constitute a "trade or business" under the Code, and, therefore, the income it derived from margin-financed securities is not subject to the UBIT. In this respect, Taxpayer argues that in determining whether an exempt organization's income is subject to the UBIT as "unrelated business taxable income" the following three requirements must be met: "(1) [i]t is income from trade or business; (2) such trade or business is regularly carried on by the organization; and (3) the conduct of such trade or business is not substantially related (other than through the production of funds) to the organization's performance of its exempt functions." Treas.Reg. § 1.513–1(a); *see United States v. American College of Physicians,* 475 U.S. 834, 838–39, 106 S.Ct. 1591, 89 L.Ed.2d 841 (1986). Taxpayer maintains that the first prong of this test is not met because Supreme Court decisions, such as *Higgins v. Commissioner,* 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941), and *Whipple v. Commissioner,* 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963), hold that securities investing is not the conduct of a "trade or business." As

26 U.S.C. § 514(a)(1).

further set out below, we find no merit to Taxpayer's argument.

Under the plain language of the UBIT, the purchase of securities on margin is a purchase using borrowed funds; therefore, under § 514(c), the securities are subject to an "acquisition indebtedness." *See Elliot Knitwear Profit Sharing Plan v. Commissioner*, 614 F.2d 347, 348–51 (3d Cir.1980). Thus, the margin-financed securities constitute "debt-financed property" under § 514(b)(1). As "debt-financed property," § 512(b)(4) and § 514(a)(1) require that the income derived from these securities be treated "as an item of gross income derived from an unrelated trade or business" (in the proportion that the basis of the property bears to the amount financed), and, therefore, this income is included in the § 512 computation of unrelated business taxable income. *See, e.g., id.* (holding securities purchased on margin are subject to UBIT, as margin-financed securities are debt-financed property, and § 514(a) requires treating income derived therefrom as income from unrelated trade or business). Thus, Taxpayer's reliance on Supreme Court decisions construing "trade or business" in other contexts and under the general test for determining unrelated business taxable income is misplaced because § 512(b)(4) and § 514(a)(1) require that Taxpayer's income derived from margin-financed securities be treated as income derived from an unrelated trade or business.

### 2. Unfair Competition

■ Despite the plain language of the UBIT, and its straightforward applicability to the income Taxpayer derived from margin-financed securities, Taxpayer argues that the UBIT does not apply here because neither Taxpayer nor any third-party derived, directly or indirectly, an "unfair competitive advantage" over taxable entities. Taxpayer asserts that because there has been no showing of "unfair competition," the income it derived from mar-gin-financed securities is not subject to the UBIT. We find no merit to this argument.

First, and foremost, there is nothing in the plain language of the UBIT requiring a showing of unfair competition. Nevertheless, Taxpayer maintains that the legislative history of the UBIT compels such a requirement because Congress's "sole" purpose in enacting the UBIT was to prevent the business activities of tax-exempt organizations from gaining an unfair competitive advantage over taxable entities. Taxpayer relies on *Greene v. United States*, 79 F.3d 1348 (2d Cir.1996), in which this Court stated: "Although a statute's plain language is generally dispositive, it sometimes will yield when evidence of legislative history is so strong to the contrary that giving a literal reading to the statutory language will result in defeating Congress' purpose in enacting it." *Id.* at 1356. Although we believe that the plain language of the UBIT is dispositive here and should end our inquiry, resort to the legislative history does not, in any event, assist Taxpayer.

Since the first income tax, various organizations, including those established for charitable and educational purposes, have received exemption from income taxes. *Rensselaer Polytechnic Institute v. Commissioner*, 732 F.2d 1058, 1060 (2d Cir. 1984) (citing relevant revenue acts). Prior to 1950, the tax-exemption provisions were interpreted to allow tax-exempt organizations to acquire commercial business enterprises and avoid paying taxes on the income generated. *See C.F. Mueller Co. v. Commissioner*, 190 F.2d 120 (3d Cir.1951). As this Court later observed in *Rensselaer Polytechnic*, Congress "[r]ecogniz[ed] ... the unfair competitive advantage that freedom from income taxation could accord tax-exempt institutions that entered the world of commerce," and so, in 1950, "extended the income tax to the 'unrelated business income' of certain tax-exempt institutions." *Rensselaer Polytechnic*, 732 F.2d at 1061 (citing Pub.L. No. 81–814, § 301, 64 Stat. 906, 947 (1950)). As this

Court further observed: "[Congress's] objective in changing the law was to eliminate the competitive advantage educational and charitable corporations enjoyed over private enterprise, without jeopardizing the basic purpose of the tax-exemption." *Id.* (citing H.R.Rep. No. 81–2319 at 36–38 (1950); S.Rep. No. 81–2375 at 28–30 (1950)).

One of the earliest cases addressing the legislative history of the UBIT was *Clarence LaBelle Post No. 217 v. United States*, 580 F.2d 270 (8th Cir.1978). In *Clarence LaBelle*, a tax-exempt organization sued for a refund of tax paid on its income from bingo games, after the IRS treated the bingo games as an unrelated trade or business under § 513 and taxed the income under § 511. The organization argued, *inter alia*, that income from an unrelated trade or business may be taxed only if the trade or business competes with a taxpaying entity, and that it was not subject to the tax because only tax-exempt nonprofit organizations may operate bingo games under the applicable state law. *Id.* at 271. The Eighth Circuit disagreed and held that "the tax on unrelated business income is not limited to income earned by a trade or business that operates in competition with taxpaying entities." *Id.* at 272. In reviewing the legislative history of the UBIT, the Eighth Circuit concluded that Congress enacted §§ 511–513 in order to "close a tax loophole" and raise additional revenue, as well as to eliminate a form of unfair competition. *Id.*

As for § 514, this section initially was "designed to prevent, *inter alia*, an exempt organization from trading in real estate on its exemption." *Elliot Knitwear*, 614 F.2d at 350–51. In 1969, Congress amended § 514 as part of the Tax Reform Act of 1969, Pub.L. No. 91–172, 83 Stat. 487, to broaden its reach beyond "debt-financed leases" in order to encompass income from property subject to acquisition indebtedness, *i.e.*, "debt-financed property." *Elliot Knitwear*, 614 F.2d at 351. As the legislative history shows, Congress intended to remedy "weaknesses" in the then-existing UBIT to discourage the exploitation of an exempt organization's tax-exempt status for the benefit of a non-exempt organization in situations such as those addressed in *Commissioner v. Brown*, 380 U.S. 563, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965), and *University Hill Foundation v. Commissioner*, 51 T.C. 548, 1969 WL 1730 (1969), *rev'd*, 446 F.2d 701 (9th Cir.1971). *See* H.R.Rep. No. 91–413 at 44–46 (1969), *reprinted in* 1969 U.S.C.C.A.N. 1645, 1690–91. The House Ways and Means Committee explained the provision as follows:

> [U]nfair business competition [through use of tax-exempt organizations] should be discouraged.... [The] way to do so is by eliminating the incentive for owners desiring to sell a business to exploit the tax exemption of nonprofit organizations. This objective can be achieved by imposing the unrelated business income tax on the income received by the exempt organization in proportion to the debt existing on the income-producing property.
>
> Under the bill, the unrelated debt-financed income is included in "unrelated business income." It would be subject to tax, however, only if the income arises from property acquired or improved with borrowed funds and the production of the income is unrelated to the educational, charitable, religious, or other purpose constituting the basis of the organization's tax exemption.

*Id.* at 46, *reprinted in* 1969 U.S.S.C.A.N. at 1691.

While some courts of appeals, including the Eighth Circuit in *Clarence LaBelle*, have concluded that eliminating unfair competition was one purpose among many that motivated Congress to enact the UBIT, other courts of appeals have concluded that eliminating unfair competition was Congress's "primary" purpose. *See Louisiana Credit Union League v. United States*, 693 F.2d 525, 540–41 (5th Cir.1982) (recognizing two lines of authority: one where courts find prevention of unfair

competition to be "primary purpose" and other where courts "prescribed a broader interpretation of the statute, focusing on the multiple objectives of Congress in enacting the unrelated business income tax," and concluding that a "study of the statute, the regulations, the legislative history, and the cases inclines us toward the latter view"); *see, e.g., Julius M. Israel Lodge of B'nai B'rith No. 2113 v. Commissioner*, 98 F.3d 190, 194 (5th Cir.1996) (multiple purposes); *NCAA v. Commissioner*, 914 F.2d 1417, 1425 & n. 9 (10th Cir.1990) (concluding that "[a]lthough prevention of unfair competition was the main purpose behind the [UBIT], revenue raising concerns also played a role in Congress' actions"); *Service Bolt & Nut Co. v. Commissioner*, 724 F.2d 519, 524 (6th Cir.1983) (primary purpose); *Elliot Knitwear*, 614 F.2d at 350 (primary purpose); *Hope Sch. v. United States*, 612 F.2d 298, 304 (7th Cir.1980) (primary purpose).

The Supreme Court also has observed that the "undisputed purpose" of the UBIT was to prevent unfair competition. *Portland Golf Club v. Commissioner*, 497 U.S. 154, 161–62, 110 S.Ct. 2780, 111 L.Ed.2d 126 (1990) (citing S.Rep. No. 81–2375 at 28 (1950); H.R.Rep. No. 81–2319 at 36 (1950)); *United States v. American Bar Endowment*, 477 U.S. 105, 114, 106 S.Ct. 2426, 91 L.Ed.2d 89 (1986); *American College of Physicians*, 475 U.S. at 837–38, 106 S.Ct. 1591.

Although Taxpayer argues that *Portland Golf, American Bar Endowment,* and *American College of Physicians* "overruled" *Clarence LaBelle*'s determination that the elimination of unfair competition was not the "sole" purpose of the UBIT, we find these cases unavailing to Taxpayer, as the Supreme Court did not hold in these cases that unfair competition must be shown for imposition of the UBIT, particularly as applied to "debt-financed property." Similarly, although Taxpayer argues that this Court "held" in *Rensselaer Polytechnic*, 732 F.2d at 1061, and *People's Educational Camp Society, Inc. v. Com-*

*missioner*, 331 F.2d 923, 935 (2d Cir.1964), that "the" purpose of the UBIT was the elimination of unfair competition, these cases also do not assist Taxpayer, as both involved undisputed evidence of unfair competition and did not address whether unfair competition must be shown for imposition of the UBIT. Moreover, Taxpayer cites no court of appeals case holding that unfair competition must be shown for imposition of the UBIT, and our review of the applicable case law reveals that no court of appeals has required such a showing. *See, e.g., State Police Ass'n v. Commissioner*, 125 F.3d 1, 8 (1st Cir.1997) (holding that imposition of UBIT does not necessarily require showing of actual competition); *NCAA*, 914 F.2d at 1425 (same); *Fraternal Order of Police, Illinois State Troopers, Lodge No. 41 v. Commissioner*, 833 F.2d 717, 722–23 (7th Cir.1987) (same); *Clarence LaBelle*, 580 F.2d at 272 (holding that actual competition is only one factor to be considered in imposing UBIT).

Taxpayer also argues that the "mischief rule" of statutory construction, as exemplified in *Elliot Coal Mining Co. v. Director, Office of Workers' Compensation Programs*, 17 F.3d 616, 631 (3d Cir.1994), requires that we bear in mind the mischief that Congress had in view when it enacted the UBIT and interpret the UBIT to tax only that category of conduct within the mischief Congress was attacking, namely, elimination of unfair competition. We reject Taxpayer's argument. Even though Congress enacted the UBIT primarily to eliminate unfair competition, it chose language going beyond the evil which it sought to correct in closing a loophole when it imposed the UBIT on "debt-financed property." As the tax court observed in *Kern County Electrical Pension Fund v. Commissioner*, 96 T.C. 845, 1991 WL 106265 (1991), *aff'd by unpublished opinion*, 988 F.2d 120 (9th Cir.1993):

We quite agree that Congress was concerned with putting an end to the abuses reflected in *Clay Brown* and *University Hill*. But, although it focused

on those particular abuses, the provisions which it enacted were couched in broader terms, and were not limited precisely to those situations. This is but another instance of Congress' going beyond the evil which it seeks to correct in closing a loophole. In the words of Judge Friendly in *Commissioner v. Pepsi-Cola Niagara Bottling Corp.*, 399 F.2d 390, 392 (2d Cir.1968), "a legislature seeking to catch a particular abuse may find it necessary to cast a wider net."

*Kern County Elec.*, 96 T.C. at 853; *see also Elliot Knitwear*, 614 F.2d at 350 (holding that although purchase of securities on margin does not seem to present source of unfair competition, both plain meaning of statute and congressional intent support imposition of UBIT on this type of income). In short, we find no basis for ignoring the plain language of the statute and its applicability to Taxpayer's income derived from debt-financed property even absent a showing of unfair competition. Despite Taxpayer's argument, we cannot say that the legislative history of the UBIT is so "strong to the contrary" that such an application of the statute would defeat Congress's purpose in enacting it.

Accordingly, we reject Taxpayer's argument that unfair competition must be shown for the imposition of the UBIT on income it derived from margin-financed securities.

### 3. *"Held to Produce Income"*

■ Next, Taxpayer argues that its margin-financed securities are not "debt-financed property" because § 514(b)(1) defines "debt-financed property" as property that is "held to produce income," and this phrase should be interpreted to include only "periodic" income. We find no merit to this argument for at least two reasons. First, Taxpayer cites no authority for this construction of § 514(b)(1), and there is

nothing in the statutory language or legislative history of the UBIT supporting this restrictive interpretation. Second, the applicable regulation specifically construes "income" under § 514(b)(1) as including both capital gains and recurring or "periodic" income (e.g., dividends). In this respect, Treasury Regulation § 1.514(b)–1(a) defines "debt-financed property" as

> any property which is held to produce income (e.g., rental real estate, tangible personal property, and corporate stock), and with respect to which there is an acquisition indebtedness (determined without regard to whether the property is debt-financed property) at any time during the taxable year. *The term "income" is not limited to recurring income but applies as well to gains from the disposition of the property.*

Treas. Reg. § 1.514(b)–1(a) (emphasis added). Although Taxpayer urges us to reject the Commissioner's interpretation of the UBIT, we must sustain the regulation unless it is "unreasonable and plainly inconsistent" with the statute. *Fulman v. United States*, 434 U.S. 528, 533, 98 S.Ct. 841, 55 L.Ed.2d 1 (1978); *Bingler v. Johnson*, 394 U.S. 741, 749–51, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969).

Section 61(a) of the Code broadly defines income to include "all income from whatever source derived," and lists, as examples, both periodic income (e.g., dividends and interest) and nonperiodic income (e.g., compensation for services; gross income derived from business; and gains derived from dealings in property). 26 U.S.C. § 61(a)(1), (2), (3), (4), (7). There is nothing in the statutory language to suggest that this general definition of "income" is inapplicable to § 514(b)(1) or to justify limiting § 514(b)(1) to "periodic" income. Moreover, the legislative history of the UBIT does not indicate that Congress intended to tax only "periodic" income under those provisions.[3] Accordingly-

---

**3.** Indeed, the legislative history suggests otherwise. For instance, the Senate Report to

the 1969 amendment to § 514 reflects:

ly, we reject Taxpayer's argument that § 514(b)(1)'s reference to "debt-financed property" includes only "periodic" income.

### 4. Exceptions to Acquisition Indebtedness and Debt–Financed Property

■ Finally, Taxpayer argues that even if the income it derived from · margin-financed securities would otherwise constitute unrelated business income under §§ 511 and 512, the exceptions to "debt-financed property" and "acquisition indebtedness" under § 514(b)(1)(A)(i) and § 514(c)(4), respectively, apply to exclude this income. In this respect, Taxpayer argues that its income is not taxable because (1) the securities it purchased on margin are "substantially related" to its exempt purpose under the § 514(b)(1)(A)(i) exception to "debt-financed property"; and (2) its purchase of securities on margin is "inherent" to its exempt purpose under the § 514(c)(4) exception to "acquisition indebtedness." We find no merit to Taxpayer's argument, as both exceptions are inapplicable here.

The leading case addressing these exceptions is *Elliot Knitwear,* which involved a tax-exempt employee profit-sharing plan which derived income from margin-financed securities. *See Elliot Knitwear,* 614 F.2d at 348. In holding the income subject to the UBIT, the Third Circuit rejected the plan's argument that its margin account fell within the § 514(c)(4) exception to acquisition indebtedness because the margin account was "inherent" in the plan's exempt purpose, and the plan's further argument that the margin account fell within the § 514(b)(1)(A)(i) exception to debt-financed property because the margin account was "substantially related" to the plan's exempt purpose, namely, accumulation of income for employees for their retirement. *See id.* at 349–51.

The court held that "inherent," as used in § 514(c)(4), is synonymous with "essential," and concluded that, while investing on margin may have been desirable for the plan, it was not essential to its tax-exempt purpose of providing employee participation in the employer's profits. *Id.* at 349–50. The court reasoned that "while investment of the fund probably is inherent to its tax-exempt purpose, debt-financed investment is not." *Id.* at 350. Thus, the court held that the "purchase of securities on margin is not inherent to the purpose of a tax-exempt profit-sharing plan within the meaning of section 514(c)(4)" and, therefore, not within the exception to "acquisition indebtedness." *Id.*

As for the plan's argument that the § 514(b)(1)(A)(i) exception to debt-financed property applied, the court first observed that "[i]t is the property itself, and not the income generated by the property, that must be substantially related to the exempt purpose of the organization." *Id.* In rejecting the plan's argument, the court reasoned:

> It is expected that the buying and selling of income-producing property will be a method utilized to increase and accumulate income and gains, but such investment activity is a means to accomplish the purpose of deferred compensation it is not the purpose itself of the Plan. Even assuming, arguendo, that investment of contributions for accumulation of income is a function of the Plan, indebtedness or acquisition of securities on margin is not necessary for such accumulation or that purpose.

*Id.* Moreover, the court recognized that the "statute does not exclude property that is substantially related by virtue of 'the need of the organization for income or

Both the House bill and the committee amendments provide that all exempt organizations' income from "debt-financed" property, which is unrelated to their exempt function, is to be subject to tax in the proportion in which the property is fi-

nanced by the debt.... Capital gains on the sale of debt-financed property also are taxed in the same proportions.
S. Rep. No. 91–552 at 63–64 (1969), *reprinted in* 1969 U.S.C.C.A.N. 2027, 2092.

**156**

funds.'" *Id.* (quoting 26 U.S.C. § 514(b)(1)(A)(i)).

We find the *Elliot Knitwear* court's reasoning persuasive, and accordingly conclude that Taxpayer's purchase of securities on margin does not fall within the "inherent" purpose exception or the "substantially related" exception to § 514.

Taxpayer's exempt purpose is to provide funds to support UNH's educational programs. Taxpayer's purchase of securities on margin is not "inherent" or essential to that purpose. Indeed, many alternative investments, whether involving borrowed funds or not, are available to Taxpayer for generating income. Taxpayer's indebtedness incurred from its margin borrowing is readily distinguishable from the statute's example of indebtedness that is "inherent" to an organization's exempt purpose, namely, "the indebtedness incurred by a credit union . . . in accepting deposits from its members." 26 U.S.C. § 514(c)(4). Taxpayer need not purchase securities on margin to generate income from trading in securities.

For similar reasons, Taxpayer's securities purchased on margin are not "substantially related" to Taxpayer's exempt purpose of supporting UNH's educational programs. As the Third Circuit noted in *Elliot Knitwear,* the use of the property itself, not the income generated by the property, must be substantially related to the exempt purpose. *Elliot Knitwear,* 614 F.2d at 350. Taxpayer's argument ignores that the exception does not apply to property "substantially related" merely by virtue of "the need of the organization for income or funds." While margin-financed securities may be useful to accomplish that exempt purpose by their ability to generate income, their purchase and use is not substantially related to Taxpayer's tax-exempt purpose within the meaning of § 514(b)(1)(A)(i). *See id.*

Thus, Taxpayer's borrowing to purchase securities is not "inherent" to its exempt purpose; and its margin-financed securities are not "substantially related" to its

exempt purpose. Accordingly, the district court correctly held that the exceptions in § 514(b)(1)(A)(1) and § 514(c)(4) do not apply.

### III. *CONCLUSION*

We have reviewed Taxpayer's remaining arguments raised on appeal and find them to be without merit. For the above reasons, we affirm the judgment of the district court.